1  | Leslie A. Cohen, Esq. (SBN: 93698)
          leslie@lesliecohenlaw.com
2  | J'aime Williams Kerper, Esq. (SBN 261148)
          jaime@lesliecohenlaw.com
3  | LESLIE COHEN LAW, PC
     1615-A Montana Avenue
4  | Santa Monica, CA 90403
     Telephone:  (310) 394-5900
5  | Facsimile:  (310) 394-9280

6  | Attorneys for Debtor in Possession

7  |

8  |

9  |

10 | **UNITED STATES BANKRUPTCY COURT**

11 | **CENTRAL DISTRICT OF CALIFORNIA**

12 | **SAN FERNANDO VALLEY DIVISION**

13 | *In re*                                              | Case No. 1:22-bk-11181-MB

14 | National Association of Television Program    | Chapter 11
     Executives, Inc..
15 |                                                      | **DEBTOR'S MOTION FOR ORDER (A) AUTHORIZING THE SALE OF**
16 |                           Debtor and                 | **SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND**
                               Debtor in Possession       | **CLEAR OF ANY LIENS, CLAIMS,**
17 |                                                      | **ENCUMBRANCES AND INTERESTS;**
                                                          | **(B) AUTHORIZING THE ASSUMPTION**
18 |                                                      | **AND ASSIGNMENT OF CERTAIN**
                                                          | **EXECUTORY CONTRACTS AND (C)**
19 |                                                      | **GRANTING OTHER RELATED RELIEF;**
                                                          | **MEMORANDUM OF POINTS AND**
20 |                                                      | **AUTHORITIES AND DECLARATION IN**
                                                          | **SUPPORT THEREOF**
21 |
22 |                                                      | Date: December 29, 2022
                                                          | Time: 10:00 a.m.
23 |                                                      | Courtroom: 303
                                                          | Via Zoomgov
24 |                                                      | Meeting ID: 161 816 9836
                                                          | Password: 399666
25 |
26 |
27 | TO THE HONORABLE MARTIN BARASH, UNITED STATES BANKRUPTCY JUDGE;
28 | THE OFFICE OF THE UNITED STATES TRUSTEE; AND ALL OTHER PARTIES IN
   | INTEREST:

National Association of Television Program Executives, Inc. ("**Debtor**"), the Chapter 11 Debtor and Debtor-in-Possession in the above-captioned Chapter 11 bankruptcy case (the "**Case**") hereby moves the Court by way of this motion ("Sale Motion") for an order

(1) Granting the Sale Motion;

(2) Approving  the sale of substantially all of the Debtor's assets, defined as the Purchased Assets in the Asset Purchase Agreement (the "**APA**")[1] attached hereto as *Exhibit A* and sometimes referred to herein as the Assets to Brunico Communications Ltd. (the "**Buyer**" or "**Brunico**") or its assignee for a purchase price of $150,000 cash plus assumption of certain liabilities in the amount of $1,057,187.85 or to any Qualified Bidder (as defined below) that makes a higher and better Qualified Bid (as defined below) for the Assets (or a portion thereof) that the Debtor, in consultation with the Subchapter V Trustee and creditor Fontainebleau Florida Hotel, LLC (collectively, the "**Consultation Parties**"), determines to have submitted the highest and best offer for the Assets (the "**Successful Bidder**"), free and clear of all liens, claims, interests, and encumbrances, pursuant to Section 363(f), on the terms set forth herein and in the APA;

(3) finding that the Buyer or Successful Bidder, as applicable, is a good faith purchaser under Section 363(m) and entitled to the protections under Section 363(m);

(4) approving the Debtor's assumption of the Assigned Contracts and any other potentially Assigned Contracts, and the assignment thereof to the Buyer or any accepted Qualified Bidder pursuant to Section 365;

(5) approving the Cure Amounts for the Assigned Contracts and deeming the failure of a counter-party to a particular Assigned Contract to object to the

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the APA

1   proposed Cure Amount and assumption and assignment to be a waiver of such

2   objection;

3   (6) waiving the 14-day stay periods set forth in Federal Rules of Bankruptcy

4   Procedure ("**FRBP**") 6004(h) and 6006(d);

5   (7) authorizing the Debtor, Buyer or any accepted Qualified Bidder, and all other

6   parties in interest to take any and all necessary actions required to consummate

7   the sale of the Purchased Assets as contemplated by the APA, including but not

8   limited to, the assumption and assignment of the Assigned Contracts; and

9   (8) granting such other relief as is just and proper under the circumstances.

10  Dated: December 6, 2022                    LESLIE COHEN LAW, PC

11

12                                 By    */s/ Leslie A. Cohen*
                                         LESLIE A. COHEN
13                                       Attorneys for Debtor

# **Table of Contents**

I.   STATEMENT OF FACTS                                                                          7

   a.   *Background*                                                                           7

   b.   *Parties With An Interest Or Alleged Interest In the Assets To Be Sold*           7

   c.   *Specific Information Regarding The Principle Terms Of The APA*                   7

   d.   *Efforts To Market And Sell The Debtor's Assets*                                 9

     i.   Interested Parties                                                          9

     ii.   Bidding Procedures Motion                                                 10

   e.   *The Assumption and Assignment of Contracts And Related Cure Amounts*            11

II.   DISCUSSION                                                                                 12

   a.   *The Debtor Should Be Authorized To Sell The Assets Free And Clear Pursuant To 11 U.S.C. § 363 And The Terms Of The APA*   12

     i.   The Debtor Should Be Authorized To Sell The Assets                          12

       1.   Sound Business Justification                                          13

       2.   Fair and Reasonable Price                                             14

       3.   Adequate Marketing                                                    15

       4.   Accurate and Reasonable Notice                                        15

       5.   Good Faith                                                            16

     ii.   The Debtor Should Be Authorized To Sell The Assets Free and Clear          18

   b.   *The Debtor Should Be Authorized To Assume And Assign The Assigned Contracts*   18

   c.   *The Court Should Waive The Fourteen-Day Waiting Periods Set Forth In Bankruptcy Rules 6004(h) and 6006(d)*   20

III.   CONCLUSION                                                                                21

1

## TABLE OF AUTHORITIES

2

**Cases**

3  Big Shanty Land Corp. v. Comer Properties, Inc., 61 B.R. 272 (Bankr. N.D.
4       Ga. 1985)..................................................................................................................14

5  Cmty. Thrift & Loan v. Suchy (In re Suchy), 786 F.2d 900 (9th Cir. 1986)............................17

6  In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986) .....................13, 16

7  In re Alpha Industries, Inc., 84 B.R. 703 (Bankr. Mont. 1988)...........................................15, 17

8  In re Apex Oil Co., 92 B.R. 847 (Bankr. E.D.Mo. 1988) .................................................17

9  In re Canyon Partnership, 55 B.R. 520 (Bankr. S.D. Cal. 1985) ...........................................14

10  In re Central Fla. Metal Fabrication, Inc., 190 B.R. 119 (Bankr. N.D. Fla.
         1995)....................................................................................................................18

11  In re Continental Country Club, Inc., 114 B.R. 763 (Bankr. M.D. Fla. 1990).....................19

12  In re Delaware and Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991) .......................................13

13  In re Exennium, Inc., 715 F.2d 1401 (9th Cir. 1983) ...........................................................17

14  In re Gucci, 193 B.R. 411 (S.D.N.Y. 1996)..................................................................18, 19

15  In re Huntington, Ltd., 654 F.2d 578 (9th Cir. 1981).......................................................13

16  In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc., 77
        B.R. 15 (Bankr. E.D. Pa. 1987) ...................................................................................16

17  In re Klein Sleep Products, Inc., 78 F.3d 18 (2d. Cir. 1996) ....................................................18

18  In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983)..............................................................13

19  In re Mama's Original Foods, Inc., 234 B.R. 500 (C.D. Cal. 1999)........................................13

20  In re Martin (Myers v. Martin), 91 F.3d 389 (3d Cir. 1996) ...............................................13

21  In re Prime Motors Inns, 124 B.R. 378 (Bankr. S.D. Fla. 1991)..............................................19

22  In re Rock Indus. Mach. Corp., 572 F.2d 1195 (7th Cir. 1978)..............................................16

23  In re Schipper (Fulton State Bank v. Schipper), 933 F.2d 513 (7th Cir. 1991) ...................13

24  In re The Landing, 156 B.R. 246 (Bankr. E.D. Mo. 1993)..................................................13

25  In re Wilde Horse Enterprises, Inc., 136 B.R. 830 (Bankr. C.D. Cal. 1991)............13, 14, 16

26  Lubrizol Enterprises v. Richmond Metal Finishers, 756 F.2d 1043 (4th Cir.
        1985)....................................................................................................................19

27

28  Walter v. Sunwest Bank (In re Walter), 83 B.R. 14 (9th Cir. BAP 1988) ......................13, 14

**Statutes**

11 U.S.C. § 101 ................................................................................................................. 17

11 U.S.C. § 1107 ......................................................................................................... 12, 13

11 U.S.C. § 363 ..................................................................................................... 12, 13, 17, 18

11 U.S.C. § 365 ................................................................................................................. 18

**Rules**

Fed. R. Bankr. P 6004 ...................................................................................................... 20

Fed. R. Bankr. P. 6006 ...................................................................................................... 20

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF FACTS

**a.  Background**

The Debtor is a non-profit global content association and professional membership organization dedicated to shaping the future of content through global marketplaces and conferences, screenings, awards, and networking events. Representing every facet of the content business, the Debtor's rich history, spanning over five decades, cements its roots as the largest U.S.-based global content association.

On October 11, 2022 ("**Petition Date**"), the Debtor commenced this reorganization case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code. The Debtor elected to proceed as a Subchapter V debtor.

The Debtor is continuing in possession of its assets as debtor-in-possession (DIP) pursuant to sections 1107 and 1108 of the Bankruptcy Code.  As of the filing of this Motion, no trustee, examiner or Committee has been appointed in the Debtor's Chapter 11 case, other than the Subchapter V Trustee.

The Debtor timely filed its schedules of assets and liabilities and related forms ("**Schedules**") on November 18, 2022.  See Docket No. 27

Prior to its bankruptcy filing, the Debtor's operations were dramatically affected by the unavoidable cancellation of an event due to COVID, which resulted in a lengthy and drawn-out arbitration with its hospitality vendor hosting the event.  In summary, the vendor is demanding payment of a cancellation fee, and Debtor opposes the fee due to a Force Majeure clause in the agreement.  The arbitration was pending when the petition was filed, and is now stayed pursuant to 11 USC section 362.

**b.  Parties With An Interest Or Alleged Interest In the Assets To Be Sold**

Per the Schedules, the Debtor does not have any secured creditors.  Accordingly, to the best of the Debtor's knowledge, no parties assert any interests in the Assets other than the Debtor.

**c.  Specific Information Regarding The Principal Terms Of The APA**

A summary of the principal terms of the APA are as follows:[2]

1. <u>Purchased Assets</u>. The Debtor will sell substantially all of its assets, as described and enumerated in the APA and Schedule A thereto (aka the "**Purchased Assets**"), which generally includes all of the Debtor's Intellectual Property Rights.

2. <u>Excluded Assets</u>. The Debtor will not sell and will retain any assets not specified as Purchased Assets (aka "**Excluded Assets**").

3. <u>Assumed Liabilities</u>. The Buyer will assume the liabilities described and enumerated in the APA and Schedule B thereto (aka the "**Assumed Liabilities**"). [3]

4. <u>Assigned Contracts and Cure Amounts</u>. The Assigned Contracts and potentially Assigned Contracts that may be designated by the Buyer (or a Successful Bidder) for including in the Assigned Contracts, as well as the related Cure Amounts for the Assigned Contracts, and potentially Assigned Contracts, which must be paid by the Buyer (or a Successful Bidder), are listed below and are set forth in the Notice to Counterparties to Executory Contracts and Unexpired Leases that May Be Assumed and Assigned, which was approved by the Court, and served on counterparties to the Assigned Contracts, and potentially Assigned Contracts, pursuant to the Court's Bidding Procedures Order.[4]

5. <u>Total Consideration for Purchase Assets</u>. In addition to the Cure Amounts to be paid by the Buyer (if any), the Total Consideration for the Purchased Assets is $150,000 cash plus assumption of certain liabilities in the amount of $1,057,187.85  subject to overbid.

---

[2] The following is a summary only and nothing contained herein changes the terms of the APA.  In the event of a conflict between this summary and the APA, the APA shall control.  Interested parties should read the entire APA.

[3] A Qualified Bidder may propose to assume different liabilities, in which case their bid shall be evaluated at the hearing in consultation with the Consultation Parties.

[4] A Qualified Bidder may propose to request assignment of different contracts than the Buyer, in which case their bid shall be evaluated at the hearing in consultation with the Consultation Parties.

6. <u>Representations and Warranties and Conditions</u>. The APA is subject to representations and warranties by the Debtor and the Buyer and conditions to the performance of each.

7. <u>Break Up Fee</u>. The Debtor has negotiated, and the Bankruptcy Court has approved, the reimbursement of Buyer for its reasonable out-of-pocket fees and expenses incurred in connection with the transactions contemplated by the Stalking Horse APA in the amount of $20,000 (the "**Break Up Fee**") in the event that Brunico's Bid is not the winning bid.

After considering the terms of, and benefits derived from the APA, and having no other bona fide offers to serve as a stalking horse for the acquisition of substantially all of the Debtor's Assets, the Debtor determined, in an exercise of its business judgment that the proposed sale under the APA is in the best interests of the Debtor, its estate, its creditors, and other parties in interest. The APA provides the Debtor with the funds needed to pursue and close a sale of the Assets, provides a baseline bid for the Assets, and should result in the Debtor obtaining the highest and best price for the Assets, which will benefit all parties in interest.

**d. Efforts To Market And Sell The Debtor's Assets**

**i. Interested Parties**

Prior to the chapter 11 filing, JP Bommel, then President and CEO of the Debtor, engaged in an aggressive search for a buyer and actively pursued 10 companies as potential buyers of the company. Those companies were: Penske Media Corporation (PMC), RXGlobal (MiP Markets), Questex, National Association of Broadcasters (NAB), Brunico Communications Ltd, Future Publishing Ltd, Lakewood Advisors, C21 International, Discop, and Allen Media LLC.

Unfortunately, none of the aforementioned parties wanted to take on the potential liability brought on by the Fontainebleau dispute. Accordingly, on October 11th, 2022, the Debtor filed for Chapter 11. Sadly, due to a short term cash flow issue but with what would have been a great upside for 2023 and 2024 as in person events were back, as proven by

1  a very successful NATPE Streaming Plus event on September 29th in LA, the Debtor held

2  its last event.

3      Determined to find a new home for the Debtor and fulfill its obligations to its clients'

4  credits totaling $1.3 million already paid in for future events, mostly for the Baha Mar

5  Convention in January 2023 following the filing of the petition,  JP Bommel, through his

6  industry connections and relationships, continued his efforts to market the Debtor and was

7  able to generate great interest for the Debtor's assets and secure four bids by October

8  28th; some of these offers guaranteed to take on the deferred credits.  This was an

9  intensive process involving Debtor's management and counsel.  At the end of this

10 process, after evaluating four (4) separate bids, Brunico was determined to be the best

11 offer for the Assets in the Debtor's business judgment.

12     In order to continue marketing efforts leading up to the Auction so that the Debtor

13 can attract as many qualified bidders as possible and obtain the highest and best price for

14 the assets, the Debtor has provided notice of the Auction and related Bidding Procedures

15 to all parties the Debtor has been in contact with about a potential purchase of the Assets.

16                    **ii.  Bidding Procedures Motion**

17     On November 15, 2022, the Debtor filed its *Motion For An Order (A) Approving*

18 *Bidding Procedures For Sale Of Debtors' Assets; (B) Authorizing And Scheduling An*

19 *Auction; (C) Scheduling Hearing For Approval Of The Sale Of Assets Free And Clear Of*

20 *Liens And The Assumption And Assignment Of Certain Executory Contracts And*

21 *Unexpired Leases To The Successful Bidder; (D) Approving Procedures And Setting*

22 *Deadlines For The Assumption And Assignment Of Executory Contracts And Unexpired*

23 *Leases, Including Cure  Amounts Relating Thereto; (E) Approving Certain Deadlines And*

24 *The Form, Manner And Sufficiency Of Notice; And (F) Granting Other Related Relief*,

25 Docket No. 20 (the "**Bidding Procedures Motion**").

26     On December 2, 2022, the Bankruptcy Court entered its Bidding Procedures Order

27 ("**Bidding Procedures Order**") granting the Bidding Procedures Motion and approving

28 the Bidding Procedures and forms of notices to be provided to parties in interest

(collectively, the "**Auction and Sale Notices**"). [Dkt 45]. A true and correct copy of the Bidding Procedures Order is attached hereto as ***Exhibit B,*** together with the following Auction and Sale Notices referenced in, and approved pursuant to, the Bidding Procedures Order:

- The Bidding Procedures – Exhibit "1" to Bidding Procedures Order;

- The Notice of Bidding Procedures, Auction Date and Sale Hearing – Exhibit "2" to Bidding Procedures Order, which includes the Bidding Procedures as an attachment;

- Notice of Auction and Hearing on Joint Motion Authorizing a Sale Of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests – Exhibit "3" to Bidding Procedures Order; and

- Notice to Counterparties to Executory Contracts and Unexpired Leases that May Be Assumed and Assigned – Exhibit "4" to Bidding Procedures Order.

As can be seen from the final forms of the Auction and Sale Notices, and the proofs of service thereon, which are filed concurrently herewith, the Debtor has complied with the notice requirements set forth in the Bidding Procedures Order regarding notice of the Bidding Procedures, notice of the hearing on this Sale Motion, and notice of the proposed assumption and assignment of the Purchased Contracts or any other contracts that may be later designated by the Buyer or any successful Qualified Bidder.

**e.  The Assumption and Assignment of Contracts And Related Cure Amounts**

As discussed above, pursuant to the Sale Motion, the Debtor is seeking, inter alia, an order approving (1) the Debtor's assumption of the Assigned Contracts, and possibly the potentially Assigned Contracts that may be designated by the Buyer (or a successful Qualified Bidder) and (2) the related Cure Amounts for the Assigned Contracts, and potentially Assigned Contracts set forth in the Notice to Counterparties to Executory Contracts and Unexpired Leases that May Be Assumed and Assigned.

The Notice to Counterparties to Executory Contracts and Unexpired Leases that May Be Assumed and Assigned list the following Assigned Contracts, and potentially Assigned Contracts, and related cure amounts[5] [6]:

| Contract Counterparty | Contract Name/Description | Cure Amount | To Be Assumed and Assigned Under Stalking Horse APA |
|---|---|---|---|
| JP Bommel 720 Greenwich Street Apt 2D New York, NY, 10014 | Executive consulting Agreement | $0 | |
| Edward Jones 20530 Anza Torrance, CA, 90503 | Asset management agreement | $0 | |
| John Sullivan 3944 Woolwine Drive 1st Floor Los Angeles, CA, 90063 | website maintenance and asset management agreement | $0 | |
| INTERCONTINENTAL BUDAPEST Apáczai Csere János utca 12-14 Budapest, Hungary, 1052 | Event venue contract | $0 | X |
| Pery Consulting 7607 Wiscasset Drive West Hills, CA, 91304 | Outsourced consulting and finance services agreement | $0 | |

## II.    DISCUSSION

a.    **The Debtor Should Be Authorized To Sell The Assets Free And Clear Pursuant To 11 U.S.C. § 363 And The Terms Of The APA**

i.    **The Debtor Should Be Authorized To Sell The Assets**

Pursuant to Sections 363(b)(1) and 1107(a), "[The debtor in possession], after notice and a hearing, may . . . sell . . . other than in the ordinary course of business,

---

[5] The listing of the Assigned Contracts, and potentially Assigned Contracts, above does not constitute an admission by the Debtor that your agreement actually constitutes an executory contract or unexpired lease under Section 365, and the Debtor expressly reserve the right to challenge the status of any agreement and remove any Assigned Contract.
[6] Only contracts which are still in effect and have not been terminated postpetition are included.

1  property of the estate." 11 U.S.C. §§ 363(b)(1) and 1107(a). As a general matter, a court

2  determining a Section 363(b) motion to sell property of the estate should determine,

3  based on the evidence presented, that there is a "sound business reason" to grant such

4  motion. In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983). In re Martin (Myers v.

5  Martin), 91 F.3d 389, 395 (3d Cir. 1996) citing In re Schipper (Fulton State Bank v.

6  Schipper), 933 F.2d 513, 515 (7th Cir. 1991); In re Abbotts Dairies of Pennsylvania, Inc.,

7  788 F.2d 143 (3d Cir. 1986) (implicitly adopting test of Lionel Corp. and requiring good

8  faith); In re Delaware and Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991) (concluding that

9  the Third Circuit adopted the "sound business judgment" test in the Abbotts Dairies

10  decision).

11      In the Ninth Circuit, "cause" exists for authorizing a sale of estate assets if it is in

12  the best interest of the estate, and a business justification exists for authorizing the sale.

13  In re Huntington, Ltd., 654 F.2d 578 (9th Cir. 1981); Walter v. Sunwest Bank (In re

14  Walter), 83 B.R. 14, 19-20 (9th Cir. BAP 1988). In addition, the court must further find it is

15  in the best interest of the estate. To make this determination, the court should consider

16  whether:

17      (1) the sale is fair and reasonable, i.e., the price to be paid is adequate;

18      (2) the property has been given adequate marketing;

19      (3) the sale is in good faith, i.e., there is an absence of any lucrative deals with

20          insiders, and

21      (4) adequate notice has been provided to creditors.

22  In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 841-42 (Bankr. C.D. Cal. 1991); In re

23  The Landing, 156 B.R. 246, 249 (Bankr. E.D. Mo. 1993); In re Mama's Original Foods,

24  Inc., 234 B.R. 500, 502-505 (C.D. Cal. 1999). As described in detail below, the Debtor's

25  proposed sale of the Assets to the Buyer, subject to overbid, is appropriate and should be

26  approved by the Court.

27                          **1.  Sound Business Justification**

28

1    In In re Walter, the Ninth Circuit Bankruptcy Appellate Panel adopted a flexible

2    case-by-case test to determine whether the business purpose for a proposed sale justifies

3    disposition of property of the estate under Section 363(b). In re Walter, 83 B.R. at 19. The

4    facts pertaining to the Debtor's' proposed sale of the purchases Assets amply substantiate

5    the Debtor's business decision that proceeding with such sale is in the best interest of

6    their estates and merits the approval of this Court.

7    As discussed above, the Debtor made extensive efforts to market the Assets.

8    Buyer's bona fide stalking horse offer sets a floor for overbidders to bid on the purchased

9    Assets and allows the Debtor to seek higher and better offers.

10    Moreover, time is of the essence because 1) NATPE will run out of cash by

11    February or March, 2) a venue for NATPE Miami needs to be secured this month in order

12    to guarantee an event in January 2024 and 3) production deadlines in order for the

13    successful buyer to deliver on NATPE Budapest in June will require at least six months of

14    lead time.  Both conferences will require the successful buyer to work with the clients who

15    have to include their expenditures for these conference in their budgets by end of

16    December 2022. Without the APA provided by the Buyer, the Debtor would likely have not

17    been able to effectuate an orderly and competitive auction for the Assets and may have

18    had to seek to convert or dismiss the Cases. This would have likely resulted in less value

19    obtained for the purchased Assets.

20    In consideration of the foregoing, the Debtor submits that there is a sound business

21    reason for selling the purchased Assets pursuant to the APA (or to an alternative Qualified

22    Bidder under a substantially similar APA).

23    **2.  Fair and Reasonable Price/Arms Length Sale**

24    In order for a sale to be approved under Section 363(b), the purchase price must

25    be fair and reasonable. See generally, In re Canyon Partnership, 55 B.R. 520 (Bankr. S.D.

26    Cal. 1985). The trustee (or debtor in possession) is given substantial discretion in this

27    regard. Id. In addition, courts have broad discretion with respect to matters under section

28    363(b). See Big Shanty Land Corp. v. Comer Properties, Inc., 61 B.R. 272, 278 (Bankr.

N.D. Ga. 1985). In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold. <u>Wilde Horse Enterprises, Inc</u>., 136 B.R. at 841 (<u>citing</u> <u>In re Chung King, Inc</u>., 753 F.2d 547 (7th Cir. 1985)), <u>In re Alpha Industries, Inc</u>., 84 B.R. 703, 705 (Bankr. Mont. 1988).

In this case, there is substantial evidence that the Debtor will obtain a fair and reasonable price for the purchased Assets under the circumstances. As detailed above, the Debtor has marketed its Assets for sale and been in contact with numerous Potential Bidders.

The Debtor ultimately entered into the APA with Brunico. The APA is the result of protracted, arms-length negotiations by and among the Debtor and the Buyer. The APA is subject to, among other things, potential overbids by Qualified Bidders at the auction of the purchased Assets to be conducted in advance of the hearing on this Sale Motion. As required by the Bidding Procedures Order, the Debtor served the Auction and Sale Notices as required on all of the Potential Bidders so that they would be informed off the Bidding Procedures and have an opportunity to submit higher and better offers for the Assets.

Under the foregoing conditions, the Debtor believes that the Debtor will obtain the highest and best price for the Assets under the circumstances.

### 3.  Adequate Marketing

As discussed in detail above, the Debtor's Assets were thoroughly marketed. In consideration of the marketing efforts, the unique nature of the Assets, and the number of Potential Bidders in contact with the Debtor, the Debtor submits that the marketing of the Assets was more than adequate.

### 4.  Accurate and Reasonable Notice

By way of the Bidding Procedures Order, the Court (1) approved the form of the Auction and Sale Notices and (2) found, among other things, that the Auction and Sale Notices "are each calculated to provide adequate notice concerning the proposed sale of the Assets and the proposed assumption and assignment of the Purchased Contracts, as

1   contemplated in the Stalking Horse APA, and are intended to provide due and adequate
2   notice of the relief sought in the Sale Motion" and "Compliance with the foregoing notice
3   provisions shall constitute sufficient notice of the Debtor's proposed sale of the Assets
4   free and clear of all liens, claims, interests and encumbrances (all as set forth in the Sale
5   Motion), the contemplated assumption and assignment of each purchased contract and
6   the proposed amount of Cure Costs with respect to each such purchased contract, and
7   except as set forth in paragraphs 11 and 12 of this Order, no other or further notice of the
8   sale shall be required to be provided by the Debtors."

9       As discussed above, the Debtor has complied with the notice requirements set
10  forth in the Bidding Procedures Order by timely serving the Court-approved Auction and
11  Sale Notices on parties identified by the Court in the Bidding Procedures Order.

12      Based on the foregoing, the Debtor submits that it provided accurate and
13  reasonable notice of the proposed transactions of under the APA and the relief requested
14  in the Sale Motion to all parties in interest.

15                        **5.  Good Faith**

16      When a bankruptcy court authorizes a sale of assets pursuant to Section 363(b)(1),
17  it is required to make a finding with respect to the "good faith" of the purchaser. Abbotts,
18  788 F.2d at 149. Such a procedure ensures that Section 363(b)(1) will not be employed to
19  circumvent the creditor protections of Chapter 11, and, as such, it mirrors the requirement
20  of Section 1129 that the Court independently scrutinize the proposed sale and makes a
21  finding that it has been proposed in good faith. Id. at 150.

22      "Good faith" encompasses fair value, and further speaks to the integrity of the
23  transaction. Wilde Horse, 136 B.R. at 842. With respect to the debtor's conduct in
24  conjunction with the sale, the good faith requirement "focuses principally on the element of
25  special treatment of the debtor's insiders in the sale transaction." See In re Industrial
26  Valley Refrigeration and Air Conditioning Supplies, Inc., 77 B.R. 15, 17 (Bankr. E.D. Pa.
27  1987). With respect to the buyer's conduct, this Court should consider whether there is
28  any evidence of "fraud, collusion between the purchaser and other bidders or the [debtor],

1  or an attempt to take grossly unfair advantage of other bidders." <u>Abbotts Dairies</u>, 788 F.2d

2  at 147, <u>In re Rock Indus. Mach. Corp</u>., 572 F.2d 1195, 1198 (7th Cir. 1978); <u>see Wilde</u>

3  <u>Horse</u>, 136 B.R. at 842; <u>In re Alpha Industries, Inc</u>., 84 B.R. 703, 706 (Bankr. D. Mont.

4  1988). In short, "[l]ack of good faith is generally determined by fraudulent conduct during

5  the sale proceedings." <u>In re Apex Oil Co</u>., 92 B.R. 847, 869 (Bankr. E.D.Mo. 1988) (citing

6  <u>In re Exennium, Inc</u>., 715 F.2d 1401, 1404-05 (9th Cir. 1983)).

7       The Debtor submits that the proposed sale of the Assets has been, and will be,

8  conducted in good faith. As set forth herein above and below, the APA was negotiated at

9  arms-length over a protracted period of time by and among the Debtor and the Buyer, as

10  well as earlier discussions with other potential bidders.  The Buyer is not an "insider" of

11  the Debtor, as defined by Section 101(31)(B). In addition, the Buyer's offer for the for the

12  purchased Assets is still subject to higher and better bids pursuant to the Court-approved

13  Bidding Procedures. In consideration of the foregoing, the Debtor submits that the Buyer,

14  or any successful accepted Successful Bidder, is entitled to a good faith finding pursuant

15  to Section 363(m), which is a requirement under the terms of the APA.

16       The Debtor does not have any family, personal or business connections with the

17  Buyer or any of the currently known potential bidders.  Other than being in the same

18  industry, the Debtor does not have any other relationship with the Buyer.

19       Section 363(m) provides that "[t]he reversal or modification on appeal of an

20  authorization under [section 363(b) or (c)] of a sale or lease of property does not affect the

21  validity of a sale or lease under such authorization to an entity that purchased or leased

22  such property in good faith." 11 U.S.C. § 363(m). In making a good faith determination,

23  the Ninth Circuit Court of Appeals has indicated that this requirement speaks to the

24  integrity of the purchaser's conduct in the course of the sale proceedings. <u>See Cmty. Thrift</u>

25  <u>& Loan v. Suchy (In re Suchy)</u>, 786 F.2d 900, 902 (9th Cir. 1986) (internal quotation marks

26  and citations omitted). In making a good faith determination, courts generally consider

27  whether there is any evidence of fraud, collusion, or interested dealing and whether the

28  purchaser attempted "to take grossly unfair advantage of other bidders." <u>Id.</u>

As set forth above, the Debtor believes the Buyer (or any Successful Bidder) is a good faith purchaser entitled to the protections afforded by Section 363(m).

### ii. The Debtor Should Be Authorized To Sell The Assets Free and Clear

Section 363(f) provides, in relevant part, as follows:

> The [debtor in possession] may sell property under subsection (b) . . . of this section free and clear of any interest in such property of an entity other than the estate, only if—
> (1) applicable non-bankruptcy law permits the sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.
> 11 U.S.C. §363(f).

Here, the Debtor is not aware of any creditors asserting an interest in the Assets, and the Debtor has no secured creditors. See Docket No. 40.  Accordingly, to the extent necessary, the Court can order a sale of the Assets free and clear pursuant to Section 363(f)(4).

### b. The Debtor Should Be Authorized To Assume And Assign The Assigned Contracts

Barring exceptions not herein relevant, Section 365(a) authorizes a debtor in possession, "subject to the court's approval, ... [to] assume or reject any executory contract or unexpired lease of the debtor." If there has been a default on any executory contract or unexpired lease, a debtor cannot assume such contract or lease, unless the debtor (1) cures, or provides adequate assurance that the debtor will promptly cure, such default; (2) compensates, or provides adequate assurance that the debtor will promptly compensate a party for any actual pecuniary loss to such party resulting from such default; and (3) provides adequate assurance of future performance under such contract or lease. 11 U.S.C. § 365(b)(2).

A debtor in possession may assume or reject executory contracts for the benefit of the estate. In re Klein Sleep Products, Inc., 78 F.3d 18, 25 (2d. Cir. 1996); In re Central Fla. Metal Fabrication, Inc., 190 B.R. 119, 124 (Bankr. N.D. Fla. 1995); In re Gucci, 193 B.R. 411, 415 (S.D.N.Y. 1996). In reviewing a debtor in possession's decision to assume or reject an executory contract, a bankruptcy court should apply the "business judgment test" to determine whether it would be beneficial to the estate to assume it. In re Continental Country Club, Inc., 114 B.R. 763, 767 (Bankr. M.D. Fla. 1990); see also In re Gucci, supra, 193 B.R. at 415. The business judgment standard requires that the court follow the business judgment of the debtor unless that judgment is the product of bad faith, whim, or caprice. In re Prime Motors Inns, 124 B.R. 378, 381 (Bankr. S.D. Fla. 1991), citing Lubrizol Enterprises v. Richmond Metal Finishers, 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986).

In this case, all of the foregoing requirements have been met. As discussed above, the Debtor is potentially seeking to assume of the Contracts as enumerated and to assign such Assigned Contracts to the Buyer. The assumption and assignment of the Assigned Contracts which are integral to the continued operation of the Debtor's business, is a requirement of the APA. Furthermore, the assumption and assignment of the Assigned Contracts will eliminate damages that would arise if the Assigned Contracts were rejected and reduce claims against the estate and preserve funds to be used to pay allowed claims, because the Buyer will have to pay related Cure Amounts, if any.  Therefore, the Debtor submits that the "business judgment test" has been satisfied.

In addition, as a prerequisite to the assumption and assignment of any of the Assigned Contracts designated by the Buyer, any payment or other defaults arising under the Assigned Contracts must be cured or there must be adequate assurance of prompt cure for such defaults. The Cure Amounts were set forth in the Notice to Counterparties to Executory Contracts and Unexpired Leases that May Be Assumed and Assigned, which was approved by the Court, and served on counterparties to the Assigned Contracts, and potentially Assigned Contracts, pursuant to the Court's Bidding Procedures Order. Those

1  Cure Amounts are also set forth above. The Debtor believes that there are no defaults or

2  Cure Amounts due under the Contracts.  Moreover, as part of the Bidding Procedures, to

3  the extent a contract is being assumed and assigned, the Buyer needs to provide

4  evidence of adequate assurance of future performance by the Buyer. The Buyer's

5  declaration establishing adequate assurance of future performance on assumed contracts

6  is attached as ***Exhibit C***.

7      Based on the foregoing, the Debtor submits that the requirements of Section

8  365(a), (b), (f) for the assumption and assignment of the Assigned Contracts have been,

9  or will be, satisfied.

10  **c.      The Court Should Waive The Fourteen-Day Waiting Periods Set Forth In**

11  **Bankruptcy Rules 6004(h) and 6006(d)**

12      FRBP 6004(h) provides, among other things, that an order authorizing the sale of

13  property other than cash collateral is stayed until the expiration of fourteen (14) days after

14  entry of the order, unless the court orders otherwise. Bankruptcy Rule 6006(d) has a

15  similar provision with respect to an order approving of a debtor's assumption and

16  assignment of unexpired leases and executory contracts.

17      In this Case, it is extremely important that the Debtor close the sale of the Assets

18  before December 31, 2022 because: 1) NATPE will run out of cash by February or March,

19  2) a venue for NATPE Miami needs to be secured this month in order to guarantee an

20  event in January 2024 and 3) production deadlines in order for the successful buyer to

21  deliver on NATPE Budapest in June will require at least six months of lead time.  Both

22  conferences will require the successful buyer to work with the clients who have to include

23  their expenditures for these conference in their budgets by end of December 2022. In

24  consideration of the foregoing, and in order to have sufficient time for any unforeseen

25  issues that arise regarding a close of the sale of the Assets, the Debtor requests that the

26  Court waive the fourteen (14) day waiting periods of Bankruptcy Rules 6004(h) and

27  6006(d).

28

### III.    CONCLUSION

WHEREFORE, based on the foregoing, the Debtor respectfully requests that the Court enter and order:

(1)    granting the Sale Motion;

(2)    approving the sale of substantially all of the Debtor's assets, defined as the Purchased Assets in the APA attached hereto as Exhibit "A," and sometimes referred to herein as the Assets, or to any Successful Bidder, free and clear of all liens, claims, interests, and encumbrances (to the extent any exist), pursuant to Section 363(f), on the terms set forth herein and in the APA;

(3)    finding that the Buyer or Successful Bidder, as applicable, is a good faith purchaser under Section 363(m) and entitled to the protections under Section 363(m);

(4)    approving the Debtor's assumption of the Assigned Contracts and any other potentially and the assignment thereof to the Buyer or any Successful Bidder pursuant to Section 365;

(5)    approving the Cure Amounts for the Assigned Contracts and deeming the failure of a counterparty to a particular Assigned Contract to object to the proposed Cure Amount and assumption and assignment to be a waiver of such objection;

(6)    waiving the 14-day stay periods set forth in FRBP 6004(h) and 6006(d); and

(7)    granting such further relief as the Court deems just and proper

December 6, 2022                          LESLIE COHEN LAW PC


By: _____ */s/ Leslie A. Cohen* _____
Leslie A. Cohen
Attorneys for Debtor in Possession

## DECLARATION OF JP BOMMEL

I, JP Bommel, declare as follows:

1.      I am over 18 years of age. I am the interim CEO of National Association of Television Program Executives, Inc. ("**Debtor**").  I have personal knowledge of the matters set forth below and, if called to testify, I would and could competently testify thereto.

2.      Capitalized terms in this declaration shall have the same meaning as in the foregoing Motion.

3.      The Debtor is a non-profit global content association and professional membership organization dedicated to shaping the future of content through global marketplaces and conferences, screenings, awards, and networking events. Representing every facet of the content business, the Debtor's rich history, spanning over five decades, cements its roots as the largest U.S.-based global content association.

4.      On October 11, 2022 ("**Petition Date**"), the Debtor commenced this reorganization case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code. The Debtor elected to proceed as a Subchapter V debtor.

5.      Prior to its bankruptcy filing, the Debtor's operations were dramatically affected by the unavoidable cancellation of an event due to COVID, which resulted in a lengthy and drawn-out arbitration with its hospitality vendor hosting the event.  In summary, the vendor is demanding payment of a cancellation fee, and Debtor opposes the fee due to a Force Majeure clause in the agreement.  The arbitration was pending when the petition was filed.

6.      Per the Schedules, the Debtor does not have any secured creditors. Accordingly, to the best of the Debtor's knowledge, no parties assert any interests in the Assets other than the Debtor.

7.      After considering the terms of, and benefits derived from the APA, and having no other bona fide offers to serve as a stalking horse for the acquisition of substantially all of the Debtor's Assets, the Debtor determined, in an exercise of its

business judgment that the proposed sale under the APA is in the best interests of the
Debtor, its estates, its creditors, and other parties in interest. The APA provides the
Debtor with the funds needed to pursue and close a sale of the Assets, provides a
baseline bid for the Assets, and should result in the Debtor obtaining the highest and best
price for the Assets, which will benefit all parties in interest.

8.      Prior to the chapter 11 filing, I engaged in an aggressive search for a buyer
and actively pursued 10 companies as potential buyers of the company.  Those
companies were:  Penske Media Corporation (PMC), RXGlobal (MiP Markets), Questex,
National Association of Broadcasters (NAB), Brunico Communications Ltd, Future
Publishing Ltd, Lakewood Advisors, C21 International, Discop, and Allen Media LLC.

9.      Unfortunately, none of the aforementioned parties wanted to take on the
potential liability brought on by the Fontainebleau dispute.  Accordingly, on October 11th,
2022, the Debtor filed for Chapter 11. Sadly, due to a short term cash flow issue but with
what would have been a great upside for 2023 and 2024 as in person events were back,
as proven by a very successful NATPE Streaming Plus event on September 29th in LA,
the Debtor held its last event.

10.      Determined to find a new home for the Debtor and fulfill its obligations to its
clients' credits totaling $1.3 million already paid in for future events, mostly for the Baha
Mar Convention in January 2023 following the filing of the petition,  I, through my industry
connections and relationships, continued my efforts to market the Debtor and was able to
generate great interest for the Debtor's assets and secure four bids by October 28th;
some of these offers guaranteed to take on the deferred credits.  This was an intensive
process involving Debtor's management and counsel.  At the end of this process, after
evaluating four (4) separate bids, Brunico was determined to be the best offer for the
Assets in the Debtor's business judgment.

11.      In order to continue marketing efforts leading up to the Auction so that the
Debtor can attract as many qualified bidders as possible and obtain the highest and best
price for the assets, the Debtor has provided notice of the Auction and related bidding

Procedures to all parties the Debtor has been in contact with about a potential purchase of the Assets.

12.    As discussed above, the Debtor made extensive efforts to market the Assets. Buyer's bona fide stalking horse offer sets a floor for overbidders to bid on the purchased Assets and allows the Debtor to seek higher and better offers.

13.    The APA is the result of protracted, arms-length negotiations by and among the Debtor and the Buyer. The APA is subject to, among other things, potential overbids by Qualified Bidders at the auction of the purchased Assets to be conducted in advance of the hearing on this Sale Motion. As required by the Bidding Procedures Order, the Debtor served the Auction and Sale Notices on all of the Potential Bidders so that they would be informed off the Bidding Procedures and have an opportunity to submit higher and better offers for the Assets

14.    In consideration of the marketing efforts, the unique nature of the Assets, and the number of Potential Bidders in contact with the Debtor, the Debtor submits that the marketing of the Assets was more than adequate

15.    The Debtor submits that the proposed sale of the Assets has been, and will be, conducted in good faith. As set forth herein above, the APA was negotiated at arms-length over a protracted period of time by and among the Debtor and the Buyer, as well as earlier discussions with other potential bidders.  The Buyer is not an "insider" of the Debtor, as defined by Section 101(31)(B). In addition, the Buyer's offer for the for the purchased Assets is still subject to higher and better bids pursuant to the Court-approved Bidding Procedures. In consideration of the foregoing, the Debtor submits that the Buyer, or any successful accepted Successful Bidder, is entitled to a good faith finding pursuant to Section 363(m), which is a requirement under the terms of the APA.

16.    The Debtor does not have any family, personal or business connections with the Buyer or any of the currently known potential bidders.  Other than being in the same industry, the Debtor does not have any other relationship with the Buyer.

17.     The Debtor is not aware of any creditors asserting an interest in the Assets, and the Debtor has no secured creditors.

18.     In this Case, it is extremely important that the Debtor close the sale of the Assets before December 31, 2022 because: 1) NATPE will run out of cash by February or March, 2) a venue for NATPE Miami needs to be secured this month in order to guarantee an event in January 2024 and 3) production deadlines in order for the successful buyer to deliver on NATPE Budapest in June will require at least six months of lead time.  Both conferences will require the successful buyer to work with the clients who have to include their expenditures for these conference in their budgets by end of December 2022.

19.     A true and correct copy of the Asset Purchase Agreement (the "**APA**") attached hereto as ***Exhibit A***.

20.     A true and correct copy of the Bidding Procedures Order is attached hereto as ***Exhibit B,*** together with the following Auction and Sale Notices.

21.     A true and correct copy of the Buyer's declaration establishing adequate assurance of future performance on assumed contracts is attached as ***Exhibit C***

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 6th day of December 2022, at New York, NY.

_____
*JP Bommel*
JP Bommel

# **EXHIBIT A**

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "Agreement") is made this 28th day of November 2022, by and among Brunico Communications Ltd., Canadian corporation ("Buyer"); and National Association of Television Program Executives, Inc., Debtor-in-Possession ("Seller").

## RECITALS

WHEREAS, on October 11, 2022, Seller filed a voluntary petition for relief (the "Bankruptcy Case") under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court");

WHEREAS, Seller is a non-profit global content association and professional membership organization dedicated to shaping the future of content through global marketplaces and conferences, screenings, awards, and networking events (such activities of Seller, the "Business");

WHEREAS, Seller wishes to sell, transfer and assign, and Buyer wishes to purchase, acquire and assume the Purchased Assets and the Assumed Liabilities, as applicable (the "Sale") on the terms and subject to the conditions set forth in this Agreement and to be set forth in an order of the Bankruptcy Court authorizing and approving the sale pursuant to sections 363 and 365 of the Bankruptcy Code (the "Sale Order").

WHEREAS, Seller and Buyer acknowledge and agree that the negotiation for the Sale and the performance of the obligations hereunder and the consummation of the transactions described herein by Seller and Buyer are and have been at arm's length and in good faith.

NOW THEREFORE, in consideration of the foregoing and of the mutual agreements and covenants contained herein, the parties, intending to be legally bound, agree as follows:

## ARTICLE I
## DEFINITIONS

For purposes of, and in addition to terms defined elsewhere in, this Agreement (including the Schedules attached hereto), the following terms shall have the meanings set forth below:

"Action" means any demand, claim, action, suit or proceeding, arbitral action, inquiry, criminal prosecution or investigation by or before any Governmental Authority.

"Business Day" means any day of the year on which national banking institutions within the State of California are open to the public for conducting business and are not required or authorized to close.

"Claim" means a "claim" as defined in section 101(5) of the Bankruptcy Code, to the extent allowed pursuant to section 502 of the Bankruptcy Code.

"Governmental Authority" means any government or governmental or regulatory body thereof, or political subdivision thereof, whether foreign, federal, state, or local, or any agency, instrumentality or authority thereof, or any court or arbitrator (public or private).

"Knowledge of Seller" means the actual knowledge of the board of directors of Seller.

"Law" means any federal, state, local or foreign law, statute, code, ordinance, rule or regulation.

"Legal Requirements" means any federal, state, local, municipal, foreign or other Law, statute, constitution, principle of common law, resolution, ordinance, code, edict, decree, rule, regulation, ruling or requirement issued, enacted, adopted, promulgated, implemented or otherwise put into effect by or under the authority of any Governmental Authority and all requirements set forth in applicable agreements, contracts and understandings.

"Liability" means any Claim, including any indebtedness, obligation or other liability (whether or not absolute, accrued, matured, contingent, liquidated, known, suspected, fixed or otherwise), including, any fine, assessment, penalty, judgment, award or settlement respecting any judicial, administrative or arbitration proceeding, damage, loss, claim or demand with respect to any Legal Requirement.

"Lien" means any lien, encumbrance, pledge, mortgage, deed of trust, security interest, claim, lease, charge, option, right of first refusal, easement, servitude, proxy, voting trust or agreement, transfer restriction under any shareholder or similar agreement or encumbrance.

"Material Adverse Effect" means any event or change that (A) has a material adverse effect on the Purchased Assets, taken as a whole or (B) prevents any Seller from performing its obligations under this Agreement or the consummation of the transactions contemplated hereby.

"Order" means any order, injunction, judgment, decree, ruling, writ, assessment or arbitration award of a Governmental Authority.

"Person" means any individual, corporation, limited liability company, partnership, firm, joint venture, association, joint-stock company, trust, unincorporated organization, Governmental Authority or other entity.

## ARTICLE II
## PURCHASE AND SAEL OF ASSETS; ASSUMPTION OF LIABILITIES

### 2.1    Purchase and Sale of Assets

On the terms and subject to the conditions set forth in this Agreement and the Sale Order, at the Closing (as defined in Section 7.1 below), Buyer shall purchase, acquire and accept from Seller, and Seller shall sell, transfer, assign, convey and deliver to Buyer, free and clear of all Liens to the fullest extent permissible under section 363(f) of the Bankruptcy Code, all of Seller' right, title and interest in, to and under all of the following assets (collectively, the "Purchased Assets"):

(a)         As set forth in Schedule A, all intellectual property rights arising from or in respect of the following, whether protected, created or arising under the laws of the United States or any other jurisdiction:  (i) all patents and applications therefor, including continuations, divisionals, continuations-in-part or reissues of patent applications and patents issuing thereon (collectively, "Patents"), (ii) all trademarks, service marks, trade names, service names, brand names, trade dress rights, logos, internet domain names and corporate names and general intangibles of a like nature,

together with the goodwill associated with any of the foregoing, and all applications, registrations and renewals therefor, which include but are not limited to "NATPE" and "National Association of Television Program Executives" (collectively, "<u>Marks</u>"), (iii) all copyrights and registrations and applications therefore, works of authorship and mask work rights (collectively, "<u>Copyrights</u>"), (iv) discoveries, concepts, ideas, research and development, know-how, formulae, inventions, compositions, manufacturing and production processes and techniques, technical data, procedures, designs, drawings, specifications, databases, and other proprietary and confidential information, including customer lists, supplier lists, pricing and cost information, and business and marketing plans and proposals of Seller, (collectively, "<u>Trade Secrets</u>"), (v) all computer programs (including any and all software implementations of algorithms, models and methodologies), whether in source code or object code, all databases and compilations (including any and all data and collections of data), whether machine readable or otherwise, all descriptions, flow-charts and other work product used to design, plan, organize and develop any of the foregoing, screens, user interfaces, report formats, firmware, development tools, templates, menus, buttons and icons, and all documentation including user manuals and other training documentation related to any of the foregoing (collectively, "<u>Software</u>"); and (vi) collectively, all designs, formulae, algorithms, procedures, methods, techniques, ideas, know-how, research and development, technical data, programs, subroutines, tools, materials, specifications, processes, inventions (whether patentable or unpatentable and whether or not reduced to practice), apparatus, creations, improvements, works of authorship and other similar materials, and all recordings, graphs, drawings, reports, analyses, and other writings, and other tangible embodiments of the foregoing, in any form whether or not specifically listed herein, and all related technology, that are used in, incorporated in, embodied in, displayed by or relate to, or are used by Seller in connection with the Business (collectively, "<u>Technology</u>" and, together with the Patents, Marks, Copyrights, Trade Secrets and Software, "<u>Intellectual Property Rights</u>");

(b)        all files, documents, instruments, papers, books, reports, records, tapes, microfilms, photographs, letters, budgets, forecasts, ledgers, journals, title policies, certificates of title, customer lists, regulatory filings, operating data and plans, technical documentation (including design specifications, functional requirements, operating instructions, manuals and flow charts), user documentation (including installation guides, user manuals, training materials, release notes and working papers), marketing, advertising, and promotional materials (including sales brochures, flyers, pamphlets, and web pages) and other similar materials related to the operation of the Business, employee records, customer lists, vendor lists, contractor lists, and supplier lists, wherever located, in each case whether in electronic or tangible form (collectively, "<u>Documents</u>");

(c)        all websites and social media accounts owned or controlled by the Debtor and used in its Business (including, but not limited to, Facebook, Snapchat, Instagram, Twitter, and LinkedIn), including all credentials, usernames, and passwords used to access or administer such platforms.

## 2.2    <u>Excluded Assets</u>

Nothing contained herein or in the Sale Order shall be deemed to transfer, assign or convey to Buyer, and Seller shall retain all right, title and interest to, in and under, and the Purchased Assets shall not be deemed to include any assets not specified in Section 2.1 as Purchased Assets (the "<u>Excluded Assets</u>").

3

**2.3**    **Assumption of Liabilities**

On the terms and subject to the conditions set forth in this Agreement and the Sale Order, Buyer shall assume, effective as of the Closing, only the liabilities of Seller set forth in Schedule B (collectively, the "Assumed Liabilities") which will only include the listed deferred revenue liabilities regarding event-based claims for exhibition, sponsorship, or attendee registration ("Deferred Claims") in the amounts as set forth in Schedule B (derived from the Seller's bankruptcy schedules) or the amounts set forth in any timely-filed proof of claim by those creditors identified in Schedule B, whichever is less, unless otherwise agreed to by Buyer. Schedule B will be provided by Buyer on the earlier of 5 days after Seller files its bankruptcy schedules or 3 days before the auction and sale hearing

**2.4**    **Excluded Liabilities**

Notwithstanding anything in this Agreement or the Sale Order to the contrary, Buyer shall not assume, and shall be deemed not to have assumed, and the Assumed Liabilities shall not be deemed to include any Liabilities relating to the Business other than, in each case, the Assumed Liabilities (collectively, the "Excluded Liabilities"), and Seller shall be solely and exclusively liable with respect to all such Excluded Liabilities.

**2.5**    **Designation Period**

Notwithstanding anything herein to the contrary, Buyer reserves the right, at any time during the period commencing from the date hereof and ending on the day that is 5 days prior to the date of any auction with respect to the Purchased Assets conducted pursuant to the Bidding Procedures (such period, the "Designation Period"), to, upon written notice to Seller, re-designate any Excluded Liability as an Assumed Liability, in its sole discretion.

**2.6**    **Purchase Price and Payment**

i)    Purchase Price. In consideration of the sale, transfer, conveyance, assignment and delivery of the Purchased Assets, Buyer shall (i) assume the Assumed Liabilities, (ii) pay to Seller $150,000 (the "Purchase Price").

ii)    Deposit. Within five Business Days of the execution of this Agreement, Buyer shall cause to be paid a good faith deposit of $15,000 to Seller's counsel (the "Deposit"). The Deposit is subject to return to Buyer as set forth in the Bid Procedures referenced herein and attached as Exhibit A.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents and warrants to Buyer that:

**3.1**    **Organization and Standing**

Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of California.  Seller is duly qualified to do business and is in good standing in any jurisdiction where it operates.

4

**3.2    Authority and Status**

Subject to the Sale Order, (a) Seller has the corporate power and authority to (i) execute and deliver this Agreement and each and every agreement, document, instrument and certificate required to be executed and delivered by Seller for the transfer of the Purchased Assets under this Agreement (the "Seller Documents") and (ii)  perform its obligations hereunder and consummate the Sale, (b) the execution, delivery and performance by Seller of this Agreement and the Seller Documents have been duly authorized and approved by all necessary action of the Seller, and (c) this Agreement and the Seller Documents constitute or, when executed and delivered, will constitute, the valid and legally binding obligations of Seller, enforceable against it in accordance with their respective terms.

**3.3    Status of Assets of Seller**

Seller owns and has good title to all of the Purchased Assets, in each case free and clear of all Liens.

**3.4    Assumed Liabilities**

Seller estimates that Deferred Claims total approximately $1.3 million, and will not exceed $1,430,000.

**3.5    Intellectual Property Rights**

(a)    The Intellectual Property Rights identified in Schedule A and specifically listed in Section 2.1(a) is a complete and correct list of all intellectual property rights of all Patents, Marks, Copyrights and material Software (other than off the shelf Software) applied for, filed for, owned, used, issued, registered or licensed (either as licensee or licensor) applicable to or used in the Business, together with a complete list of all licenses granted by or to the Seller with respect to any of the above. None of the Intellectual Property Rights has been or is, as applicable, cancelled, expired, abandoned or otherwise terminated. Payment of all renewal and maintenance fees in respect of all of the Intellectual Property Rights, and all filings related thereto, have been duly made.

(b)    Seller:  (i) owns, (ii) otherwise has the right pursuant to a valid written license, sublicense or other contract, or (iii) has public domain or other legal access without need of a license, lease or consent of any third party, to the Intellectual Property Rights, free and clear of all Liens, and has the right to use all such Intellectual Property Rights as currently used in the Business.

(c)    To the Knowledge of Seller, Seller is not currently in receipt of any written notice asserting that any of its Intellectual Property Rights are invalid or that the use of such Intellectual Property Rights in the Business is violating the rights of others. There is no pending or, to the Knowledge of Seller, threatened opposition, interference or cancellation proceeding before any court or registration authority in any jurisdiction against the registrations and applications set forth in Schedule A.

(d)    To the Knowledge of Seller, neither any of the Intellectual Property Rights nor the conduct of Seller' Business infringes upon, misappropriates or otherwise violates, nor within the previous 10 years has infringed upon, misappropriated or otherwise violated, in any material

respect, any intellectual property rights of others.

(e)    To the Knowledge of Seller, no Person is engaging in any activity that infringes, violates or misappropriates, in any material respect, Seller's Intellectual Property Rights.

(f)    After the consummation of the Sale, Buyer will own all right, title, and interest in and to or have a valid written license to use all Intellectual Property Rights on substantially the same terms and conditions as Seller enjoyed immediately prior to the Sale.

### 3.6    No Undisclosed Liabilities

Seller shall disclose all Liabilities against, relating to or affecting Seller, the Business and the Purchased Assets, in the schedules to be filed in its Bankruptcy Case on or before 11/25/22.

**ARTICLE IV**
**REPRESENTATIONS AND WARRANTIES OF BUYER**

Buyer represents and warrants to Seller as follows:

### 4.1    Organization and Standing

Buyer is a corporation organized under the laws of Canada, and has all requisite corporate power and authority to enter into this Agreement and the other documents and instruments to be executed and delivered by Buyer and to carry out the transactions contemplated hereby and thereby.

### 4.2    Authorization and Binding Agreement

The execution, delivery and performance of this Agreement by Buyer have been duly and validly authorized by all necessary actions on the part of Buyer. This Agreement has been duly signed and delivered by Buyer and constitutes the legal, valid and binding obligations of Buyer, enforceable against it in accordance with its terms, except as the enforceability may be affected by bankruptcy, insolvency or other similar laws affecting creditors' rights generally, and by judicial discretion in the enforcement of equitable remedies.

**ARTICLE V**
**COVENANTS**

### 5.1    Covenants of Seller

Between the date hereof and the Closing Date, except as contemplated by this Agreement or with the prior written consent of Buyer, Seller hereby covenants and agrees:

(a)    not to sell, transfer or encumber any of the Purchase Assets;

(b)    to give Buyer and its employees and other authorized representatives, during normal business hours and with reasonable written prior notice, reasonable access to the Purchased Assets and to all Documents relating to the Purchased Assets for the purpose of audit and inspection, and to furnish or cause to be furnished to Buyer or its authorized representatives, upon reasonable

6

notice, all information with respect to the Purchased Assets that Buyer may reasonably request; provided, however, that no such investigation or examination shall be permitted to the extent that it would require any Seller, to disclose information subject to attorney-client privilege or conflict with any confidentiality obligations to which the Seller is bound.

## 5.2    Joint Covenants

(a)    Seller shall use its commercially reasonable efforts, subject to applicable bankruptcy laws, rules and requirements, and Buyer shall reasonably cooperate with Seller, to obtain at the earliest practicable date all consents and approvals required to consummate the transactions contemplated by this Agreement.

(b)    Each of Seller and Buyer shall use its commercially reasonable efforts to (i) take all actions necessary or appropriate to consummate the transactions contemplated by this Agreement and (ii) cause the fulfillment at the earliest practicable date of all of the conditions to their respective obligations to consummate the transactions contemplated by this Agreement.  At and after the Closing, Buyer and Seller will, without further consideration, execute and deliver such further instruments and documents and do such other acts and things that the other party may reasonably request in order to effect or confirm the transactions contemplated by this Agreement.

## 5.3    Employees

(a)    Seller currently has no employees.

(b)    Buyer shall have the right to employ or engage as contractors or employees any or all of the former employees and former or current contractors of Seller as Buyer determines to be qualified in its absolute and sole discretion and in accordance with Buyer's employment practices and procedures.

(c)    Buyer shall have the right, subject to applicable Legal Requirements, to review and inspect Seller's employee files and records prior to the Closing.

## ARTICLE VI
## BANKRUPTCY COURT MATTERS

### 6.1    Bankruptcy Court Approval

Seller shall, subject to the requirements and obligations under the Bankruptcy Code take the following actions in the Bankruptcy Cases:

(a)    On or before November 11, 2022, Seller shall file a motion (the "Sale Motion") seeking (i) entry of an order (the "Bidding Procedures Order") approving this Agreement subject to solicitation of higher and better offers in accordance with bidding procedures in form and substance satisfactory to Buyer, substantially in the form, and including the material terms, as attached hereto as Exhibit A (the "Bidding Procedures"), and (ii) entry of the Sale Order authorizing and approving the Sale including a finding that Buyer (if Buyer is the winning bidder) is a good faith purchaser under section 363(m) of the Bankruptcy Code;

(b)    Seller shall diligently prosecute the Sale Motion; and

(c)      Neither party shall seek to modify either the Bidding Procedures Order or the Sale Order, once entered, without prior written consent of the other.

## 6.2      Approval of Break-Up Fee

(a)      Seller acknowledges and agrees that Buyer has expended, and will expend, considerable time and expense in connection with this Agreement and the negotiation thereof and the identification and quantification of assets of Seller.  In consideration therefor, Seller shall seek the approval of the Bankruptcy Court of (i) the payment of a break-up fee under the circumstances set forth in the Bidding Procedures in an amount, limited to $29,000 (the "Break-Up Fee"), and (ii) the treatment of the Break-Up Fee as an administrative priority expense under sections 503(b) and 507(a)(l) of the Bankruptcy Code.

(b)      Seller shall pay to Buyer the balance of the Break-Up Fee on the first Business Day after the earliest to occur of any of the following events:

   i)      Buyer terminates this Agreement (A) in accordance with Section 8.1(c) or (B) in accordance with Section 8.1(a) as a result of a Material Adverse Effect that is caused by any action or failure to act by Seller constituting a breach of this Agreement, gross negligence or willful misconduct;

   ii)     Seller withdraws the Sale Motion other than in connection with Seller's termination of this Agreement in accordance with Section 8.2;

   iii)    the Bankruptcy Court approves a sale to an Alternative Buyer (as defined in Exhibit A); or

   iv)     to the extent that Seller is no longer under the jurisdiction of the Bankruptcy Court as a result either of the dismissal of the Bankruptcy Case or of the consummation of a plan of reorganization in the Bankruptcy Case, consummation by Seller of an Alternative Transaction (as defined in Exhibit A) prior to a date 18 months following the date of this Agreement.

## ARTICLE VII
## CLOSING; CONDITIONS TO CLOSING

## 7.1      Time of Closing

Subject to the satisfaction of the conditions set forth in this Article VII (or the waiver thereof by the party entitled to waive that condition), the closing of the purchase and sale of the Purchased Assets and the assumption of the Assumed Liabilities provided for herein (the "Closing") shall take place on a date, set by Seller, that is no later than 5 Business Days following the satisfaction or waiver of the conditions set forth in this Article VII (other than conditions that by their nature are to be satisfied at the Closing, but subject to the satisfaction or waiver of such conditions), unless another time or date, or both, are agreed to in writing by the parties hereto.  The date on which the Closing shall be held is referred to in this Agreement as the "Closing Date".

**7.2**   **Seller's Deliveries at Closing**

At Closing, Seller shall deliver or cause to be delivered to Buyer the following:

(a)   a certified copy of the Sale Order;

(b)   one or more bills of sale, each duly executed by Seller, in a form acceptable to Buyer, and, if necessary, general assignments of all Intellectual Property Rights included among the Purchased Assets;

(c)   other such Seller Documents as Buyer may reasonably request to carry out the Sale; and

(d)   originals or copies of Documents.

**7.3**   **Buyer's Deliveries at Closing**

At Closing, Buyer shall deliver or cause to be delivered to Seller the following:

(a)   the Purchase Price as provided in Section 2.6 hereof;

(b)   each bill of sale and assignment and assumption agreement, duly executed by Buyer, and each in substantially the form attached hereto as Exhibit B; and

(c)   such other documents, instruments and certificates as such Seller may reasonably request.

**7.4**   **Conditions to Obligations of Buyer**

The obligations of Buyer to consummate the transactions contemplated by this Agreement are subject to the fulfillment (or waiver by Buyer in its sole discretion), at or prior to the Closing, of Seller's obligation to deliver, or cause to be delivered, to Buyer, each of the items set forth in Section 7.2.

**7.5**   **Conditions to Obligations of Seller**

The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to the fulfillment (or waiver by the Seller), at or prior to the Closing, of Buyer's obligation to deliver, or cause to be delivered, to the Seller, each of the items set forth in Section 7.3.

**7.6**   **Conditions to Obligations of Buyer and Seller**

The respective obligations of Buyer and Seller to consummate the transactions contemplated by this Agreement are subject to entry by the Bankruptcy Court of the Sale Order, in form and substance satisfactory to Buyer in its sole discretion, and such order shall have become a final order, not subject to appeal.

**7.7**    **Frustration of Closing Conditions**

Neither Buyer nor Seller may rely on the failure of any condition set forth in this Article VII if such failure was caused by such party's failure to comply with any provision of this Agreement.

**ARTICLE VIII**
**TERMINATION**

**8.1**    **Termination by Buyer**

Buyer may terminate this Agreement, if it is not then in material default, upon written notice to Seller at any time after the occurrence of any of the following:

(a)    there shall have occurred (and be continuing at the time of such termination) any event, change, circumstance, occurrence, effect or state of facts that, individually or in the aggregate, has had or would reasonably be expected to have a Material Adverse Effect;

(b)    any representation or warranty made by Seller in Article III hereof should fail to be true and correct on and as of the Closing Date with the same effect as though such representation and warranty had been made or given on and as of the Closing Date; or

(c)    Seller defaults in any material respect in the observance or in the due and timely performance of any of its material covenants or agreements contained herein and such default has not been cured within three days after written notice is given by Buyer.

**8.2**    **Termination by Seller**

Seller may terminate this Agreement, if it is not then in material default, upon written notice to Buyer, at any time after the occurrence of any of the following:

(a)    any representation or warranty made by Buyer in Article IV hereof shall fail to be true and correct on and as of the Closing Date with the same effect as though such representation and warranty had been made or given on and as of the Closing Date; or

(b)    Buyer defaults in the observance or in the due and timely performance of any of its material covenants or agreements contained herein, and such default has not been cured within three days after written notice by Seller

**8.3**    **Termination by Both Parties**

This Agreement may be terminated at any time prior to the Closing by mutual written consent of Seller and Buyer.  Either party may terminate on 7 business days' notice to the other if the Sale Order has not been entered by 1/31/23, unless such date is mutually extended by the parties

**8.4**    **Effect of Termination**

Except as provided in Section 6.3, in the event that this Agreement is validly terminated as provided herein, then each of the parties shall be relieved of its duties and obligations arising under

10

this Agreement after the date of such termination and such termination shall be without liability to Buyer or Seller; provided, however, that the obligations of the parties set forth in <u>Article IX</u> hereof shall survive any such termination and shall be enforceable hereunder.  Nothing in this <u>Article VIII</u> shall relieve Buyer or Seller of any liability for a breach of this Agreement prior to the date of termination (it being acknowledged that the failure of any representation or warranty contained in <u>Article III</u> or <u>Article IV</u> to be true and correct shall not be deemed a breach of the obligations of the party making such representation or warranty

**ARTICLE IX**
**MISCELLANEOUS**

**9.1**    <u>**No Survival**</u>

(a)    The representations and warranties of the Seller contained in <u>Article III</u> shall not survive the Closing, Seller shall have no liability to Buyer for any breach thereof (whether prior to or after the Closing), and the sole remedy of Buyer for any breach thereof by Seller prior to the Closing shall be the right to terminate this Agreement in accordance with and subject to the conditions contained in <u>Article VIII</u> and to receive the Break-Up Fee in accordance with the provisions of <u>Article VI</u>.

(b)    None of the covenants of Buyer or Seller contained in this Agreement (except for such items as are expressly required to be performed after the Closing) shall survive the Closing hereunder, and no party hereto shall be liable to any other after the Closing for any breach of such covenants.

**9.2**    <u>**Binding Effect; Assignment**</u>

This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.  No assignment of this Agreement or of any rights or obligations hereunder may be made by Seller (by operation of law or otherwise) without the prior written consent of Buyer and any attempted assignment by Seller without such Buyer consent shall be void.  No assignment of this Agreement or any rights or obligations hereunder may be made by Buyer (by operation of law or otherwise) without the prior written consent of Seller and any attempted assignment by Buyer without such consent shall be void; <u>provided</u>, <u>however</u>, that Buyer may, in its sole discretion and with Notice to Seller, assign or transfer to any one or more Persons any or all of its rights, interests and obligations under this Agreement, including without limitation any or all of Buyer's rights and/or interests with respect to any or all of the Purchased Assets, as long as a majority of the outstanding capital stock of any such Person is owned directly or indirectly by Buyer.

**9.3**    <u>**Taxes**</u>

Seller shall (i) be responsible for any and all Liabilities for any sales, use, stamp, documentary, filing, recording, transfer, gross receipts, registration, duty, or similar fees or taxes or governmental charges (together with any interest or penalty, addition to tax or additional amount imposed) as levied by any taxing authority in connection with the transactions contemplated by this Agreement (collectively, "<u>Transfer Taxes</u>"), regardless of the Person liable for such Transfer Taxes under applicable Law and (ii) timely file or caused to be filed all necessary documents with respect to Transfer Taxes.  The parties will reasonably cooperate to minimize any such Transfer

Taxes, including with respect to delivery location.

**9.4**   **Submission of Jurisdiction; Waiver of Jury Trial**

(a)    Without limiting any party's right to appeal any order of the Bankruptcy Court (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 9.7; provided, however, that if the Bankruptcy Case has closed, the parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the U.S. federal and state courts of competent jurisdiction located in within Los Angeles County, State of California and any appellate court from any such court, for the resolution of any such claim or dispute.  The parties hereby irrevocably waive, to the fullest extent permitted by applicable Law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law.

(b)    Each of the parties hereto hereby consents to process being served by any party to this Agreement in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 9.7.

(c)    EACH PARTY TO THIS AGREEMENT HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, MATTER OR PROCEEDING REGARDING THIS AGREEMENT OR ANY PROVISION HEREOF

**9.5**   **Governing Law**

This Agreement shall be governed, construed and enforced in accordance with the laws of the State of California, without regard to the choice of law provisions thereof.

**9.6**   **Construction**

The parties acknowledge and agree that this Agreement has been fully negotiated between them and shall not be interpreted or construed against the drafting.

**9.7**   **Notices**

All notices, demands, requests or other communication required or permitted hereunder shall be in writing and sent by certified, express or registered mail, return receipt requested, postage prepaid, overnight air courier service, personal delivery, or via facsimile (with proof of transmission) to the address specified below (or to such other address which a party shall specify to the other party in accordance herewith):

|                                                      |                                                                                                                                           |
| ---------------------------------------------------- | ----------------------------------------------------------------------------------------------------------------------------------------- |
| If to Buyer:                                         | Brunico Communications Ltd.<br>366 Adelaide St. West.      Suite 100<br>Toronto, Ontario, Canada M5V 1R9<br>    Attn:  Russell Goldstein<br>    E-Mail:  rgoldstein@brunico.com |
| With a copy to<br>(which shall not constitute notice): | Zolkin Talerico LLP<br>Attn:  Derrick Talerico<br>Email Address: dtalerico@ztlegal.com                                                  |
| If to Seller:                                        | Debtor<br>Attn:<br>Email Address:                                                                                                          |
| With a copy to:<br>(which shall not constitute notice): | Leslie Cohen<br>J'aime Williams<br>leslie@lesliecohenlaw.com<br>jaime@lesliecohenlaw.com<br>1615A Montana Ave., Santa Monica, CA 9040  |

Notice shall be deemed to have been given on the date of personal delivery, the date set forth in the records of the delivery service, or upon confirmation of email receipt

## 9.8    **Counterparts and Signatures**

This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement.  Counterpart signatures to the Agreement delivered and received by facsimile shall be acceptable and binding to both parties

## 9.9    **Entire Agreement**

This Agreement, the Schedules and Exhibits hereto, and all documents to be delivered by the parties pursuant hereto, collectively represent the entire understanding and agreement between Buyer and Seller with respect to the subject matter hereof.  This Agreement supersedes all prior memoranda, discussions and agreements between the parties hereto, and may not be modified, supplemented or amended, except by a written instrument signed by each of the parties hereto designating specifically the terms and provisions so modified, supplemented or amended.

## 9.10   **Captions**

The section captions and headings in this Agreement are for convenience and reference purposes only and should not affect in any way the meaning or interpretation of this Agreement.

## 9.11   **No Waiver**

Unless otherwise specifically agreed in writing to the contrary, (i) no waiver by any party of any default by another shall be taken or held to be a waiver by such party of any other preceding

or subsequent default and (ii) no extension of time granted by any party for the performance of any obligation or act by any other party shall be deemed to be an extension of time for the performance of any other obligation or act hereunder.

## 9.12    No Consequential Damages

Notwithstanding anything to the contrary elsewhere in this Agreement, no party shall, in any event, be liable to any other Person for any consequential, incidental, indirect, special or punitive damages of such other Person, including loss of future revenue, income or profits, diminution of value or loss of business reputation or opportunity relating to the breach or alleged breach hereof (provided that such limitation with respect to lost profits or diminution in value shall not limit Seller's right to recover contract damages in connection with Buyer's failure to close in violation of this Agreement).

## 9.13    Expenses

Except as otherwise provided in this Agreement, Seller and Buyer shall bear its own expenses incurred in connection with the negotiation and execution of this Agreement and each other agreement, document and instrument contemplated by this Agreement and the consummation of the transactions contemplated hereby and thereby.

## 9.14    No Third Party Beneficiaries

Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any Person or entity not a party to this Agreement, except to the extent expressly provided herein.

## 9.15    Interpretation

All references in this Agreement to any "Section" or "Article" are to the corresponding Section or Article, as applicable, of this Agreement unless otherwise specified. All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein. The language used in this Agreement shall be deemed to be the language chosen by the parties to express their mutual intent. In the event that an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties, and no presumption or burden of proof shall arise favoring or disfavoring any Person or entity by virtue of the authorship of any of the provisions of this Agreement.

[Signature page follows]

IN WITNESS WHEREOF, the parties hereto have executed this Asset Purchase Agreement as of the day and first year above written.

**<u>SELLER</u>**

**National Association of Television Program Executives, Inc., Debtor-in-Possession**

By: _____

Name: _____

Title: _____

**<u>BUYER</u>**

**Brunico Communications Ltd.**

By: _____

Name: _____ Russell Goldstein _____

Title: _____ President & CEO _____

15

## **SCHEUDLE A**

Without limiting the scope of the Intellectual Property Rights as set forth in Section 2.1 of this Agreement, Intellectual Property Rights include the following assets identified in the Seller's bankruptcy schedules:

1. NATPE domain names;

2. NATPE registered trademarks;

3. Customer lists

**SCHEDULE B**

| CREDITOR | AMOUNT |
|---|---|
| A&E Networks | 13,693.61 |
| Abacus Media Rights | 3,900.00 |
| All3Media International | 18,000.00 |
| ATV | 3,921.00 |
| Banijay Rights | 10,750.00 |
| Big Fish Entertainment | 5,250.00 |
| Blue Ant Media | 1,275.00 |
| Boricua TV | 1,125.00 |
| Brain Power Studio | 3,750.00 |
| Bridgestone Multimedia Group | 8,300.00 |
| Buendia Estudios | 1,100.00 |
| Calinos Entertainment | 13,100.00 |
| Candlelight Media Group | 3,550.00 |
| CDC United Network | 16,500.00 |
| Cineflix Rights | 4,325.00 |
| Cisneros Media | 5,250.00 |
| ComediHa! Distribution | 4,300.00 |
| Debmar-Mercury | 18,000.00 |
| Disney Distribution - Latin America | 50,500.00 |
| Dori Media Group | 4,250.00 |
| Dori Media Group | 2,812.50 |
| Eccho Rights | 10,000.00 |
| Electric Entertainment | 4,200.00 |
| EW Scripps Co | 7,500.00 |
| Exile Content Studio | 12,000.00 |
| Fero International | 5,250.00 |
| FlimRise | 26,750.00 |
| Flix Translations Group | 2,100.00 |
| Global Agency | 16,600.00 |
| GRB Studios | 7,800.00 |
| Great Movies Distribution | 7,800.00 |
| Hemisphere Media Group | 13,000.00 |
| Horowitz Research | 3,000.00 |
| ICEX | 60,500.00 |
| Istanbul Chamber of Commerce | 3,780.00 |
| ITV Global Entertainment | 5,250.00 |
| Kanal D International | 8,065.00 |
| KOCCA | 33,200.00 |
| Ledafilms | 1,520.00 |
| Lionsgate TV | 64,000.00 |
| MA Production Film | 7,625.00 |
| Mediagenix | 2,000.01 |
| Mega Global Entertainment (MGE) | 1,650.00 |

**SCHEDULE B**

| | |
|---|---:|
| Mesber Agency | 1,050.00 |
| Monarch Films | 975.00 |
| Multicom Entertainment | 4,750.00 |
| NBCUniversal | 14,000.00 |
| NBCUniversal Local | 12,500.00 |
| Nielsen | 18,750.00 |
| Pinnacle Peak Pictures | 3,750.00 |
| Polar Star SA | 18,750.00 |
| PPI Releasing LLC | 4,650.00 |
| Premiere Entertainment | 2,450.00 |
| Prime Entertainment | 2,000.00 |
| PROCOLUMBIA | 19,500.00 |
| Record TV | 21,976.50 |
| Red Arrow Studios International | 4,850.00 |
| Reel One Entertainment | 3,750.00 |
| Secuoya Studios SL | 3,615.00 |
| Shoreline Entertainment | 3,750.00 |
| Shout! Factory | 10,000.00 |
| Sociedade Independente de Comunicacao (SIC Portug | 4,300.00 |
| Somos Distribution | 27,400.00 |
| Studio Canal | 3,500.00 |
| Swarm Studios | 4,245.00 |
| Telco Productions Inc | 3,600.00 |
| Televisa International | 62,850.00 |
| The Associated Press | 15,850.00 |
| The Asylum | 12,250.00 |
| The Media Pro Studio US | 9,500.00 |
| The Television Syndication Co | 1,404.00 |
| Toei Animation Inc | 8,300.00 |
| Trifecta Entertainment | 9,750.00 |
| Vargo Media | 1,680.00 |
| Veronica Lake Books | 1,500.00 |
| Viaccess-Orca | 1,785.00 |
| ViacomCBS Networks | 184,615.23 |
| Vision Films Inc | 7,800.00 |
| VMI Worldwide | 1,260.00 |
| Wag Entertainment | 2,500.00 |
| Warner Bros International TV Production | 9,750.00 |
| Worldwide Audiovisual Women's Association | 27,840.00 |
| YLE | 2,450.00 |
| ZDF Studios | 4,750.00 |
| **TOTAL** | **1,057,187.85** |

**EXHIBIT B**



Leslie A. Cohen, Esq. (SBN: 93698)
 leslie@lesliecohenlaw.com
J'aime Williams Kerper, Esq. (SBN 261148)
 jaime@lesliecohenlaw.com
LESLIE COHEN LAW, PC
1615-A Montana Avenue
Santa Monica, CA 90403
Telephone:  (310) 394-5900
Facsimile:  (310) 394-9280

Attorneys for Debtor in Possession

**FILED**

DEC 02 2022

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                Deputy Clerk

**ENTERED**

DEC 02 2022

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO DIVISION**

| | |
|---|---|
| *In re* | Case No. 1:22-bk-11181-MB |
| National Association of Television Program Executives, Inc.. | Chapter 11 |
| Debtor and<br>Debtor in Possession | **ORDER**<br>(A) **APPROVING BIDDING PROCEDURES FOR SALE OF DEBTORS' ASSETS;**<br>(B) **AUTHORIZING AND SCHEDULING AN AUCTION;**<br>(C) **SCHEDULING HEARING FOR APPROVAL OF THE SALE OF ASSETS FREE AND CLEAR OF LIENS AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO THE SUCCESSFUL BIDDER;**<br>(D) **APPROVING PROCEDURES AND SETTING DEADLINES FOR THE ASSUMPTION AND ASSIGNMENT OF THE EXECUTORY CONTRACTS AND UNEXPIRED LEASES INCLUDING CURE AMOUTNS RELATING THERETO;**<br>(E) **APPROVING CERTAIN DEADLINES AND THE FORM, MANNER AND SUFFICIENCY OF NOTICE AND**<br>(F) **GRANTING OTHER RELATED RELIEF;** |

1

Date: December 1, 2022
Time: 1:30 p.m.
Courtroom: 303
VIA ZOOMGOV

Upon the motion (the "**Procedures Motion**") [Docket No. 20] of National Association of Television Program Executives, Inc. ("**Debtor**"), the Chapter 11 Debtor and Debtor-in-Possession in the above-captioned Chapter 11 bankruptcy case (the "**Case**") seeking entry of an order (a) approving bidding procedures for the sale of substantially all of the Debtor's assets; (b) authorizing an auction (the "**Auction**") to sell the Debtor's assets; (c) scheduling a hearing (the "**Sale Hearing**") for approval of a sale of the Debtor's assets free and clear of liens, claims, encumbrances and other interests, and of the assumption and assignment of certain executory contracts and unexpired leases; (d) approving procedures and setting deadlines for the assumption and assignment of executory contracts and unexpired leases, including cure claims relating thereto; (e) approving certain deadlines and the form, manner and sufficiency notice of the foregoing; and (f) granting other related relief.[1]

And it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(a); the Court having considered the Procedures Motion, and it appearing that the relief requested in the Procedures Motion is in the best interests of the Debtor's bankruptcy estate, its creditors and other parties in interest, and after due deliberation and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES:**

A.      Notice of the Procedures Motion was adequate and sufficient under the circumstances of the Debtor's chapter 11 case, and such notice complied with all applicable requirements of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed thereto in the Procedures Motion.

2

1  "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

2  **Rules**"), and the Local Bankruptcy Rules.

3      B.    All objections to the relief requested in the Procedures Motion that have not

4  been withdrawn, waived, or settled as announced to the Court at the hearing on the

5  Procedures Motion or by stipulation filed with the Court, are overruled except as otherwise

6  expressly set forth herein.

7      C.    The bidding procedures attached hereto as _Exhibit 1_ (the "**Bidding**

8  **Procedures**") are reasonable and appropriate under the circumstances of the Debtor's

9  chapter 11 case.

10      D.    The Notice of Bidding Procedures, Auction Date and Sale Hearing,

11  substantially in the form attached hereto as _Exhibit 2_ (the "**Sale and Bidding Procedures**

12  **Notice**"); the Notice of Auction and Sale Hearing, substantially in the form attached hereto

13  as _Exhibit 3_ (the "**Creditor Notice**"); and the Notice to Counterparties to Executory

14  Contracts and Unexpired Leases that May Be Assumed and Assigned, substantially in the

15  form attached hereto as _Exhibit 4_ (the "**Cure Notice**"), are each calculated to provide

16  adequate notice concerning the proposed sale of the Assets and the proposed

17  assumption and assignment of the Purchased Contracts, as contemplated in the Stalking

18  Horse APA, and are intended to provide due and adequate notice of the relief sought in

19  the Sale Motion.

20      E.    Brunico Communications Ltd. or its designee (the "**Stalking Horse Bidder**"

21  or "**Brunico**") has expended considerable time and expense in connection with the

22  Stalking Horse APA and the negotiation thereof and the identification and quantification of

23  assets of the Debtor, justifying the Break Up Fee (as defined below) and the terms relating

24  thereto approved by the Court below.

25      F.    The entry of this Order is in the best interests of the Debtor, its estate, its

26  creditors, and other parties in interest.

27  ///

28

3

1   **THEREFORE, IT IS HEREBY ORDERED THAT:**

2       1.     The Procedures Motion shall be, and hereby is, GRANTED as set forth in
3 this Order.

4       2.     The Bidding Procedures attached hereto as _Exhibit 1_ are approved in their
5 entirety, and are incorporated into this Order as though fully set forth herein and shall
6 apply to the proposed Auction and sale of the Assets.

7       3.     The Debtor is authorized to take any and all actions necessary or
8 appropriate to implement the Bidding Procedures.

9       4.     If the Debtor receives more than one Qualified Bid (as defined in the Bidding
10 Procedures), an auction (the "**Auction**") will take place by Zoom on **December 28, 2022**
11 **at 12:00 p.m. noon**. The Zoom information for the Auction will be provided to Qualified
12 Bidders by no later than **4:00 p.m. (prevailing Pacific Time) on December 27, 2022.**

13       5.     In the event the Court approves that the Successful Bidder is a party other
14 than the Stalking Horse Bidder, the Stalking Horse Bidder shall be entitled to
15 reimbursement of the of it reasonable out-of-pocket fees and expenses incurred in
16 connection with the transactions contemplated by the Stalking Horse APA in the amount
17 of $20,000 (the "**Break Up Fee**"). The Break Up Fee shall be paid to the Stalking Horse
18 Bidder from the proceeds of sale on the closing of the Court-approved sale of the Assets
19 to a Successful Bidder other than Brunico. No further or additional order from the Court
20 shall be required in order to give effect to these provisions relating to the terms of
21 payment of the Break Up Fee.

22       6.     The Break Up Fee shall be deemed an allowed claim entitled to
23 administrative expense priority under sections 503(b)(1)(A) and 507(a)(2) of the
24 Bankruptcy Code.

25       7.     The Sale Hearing shall be conducted on **December 29, 2022, at 10:00 a.m.**
26 (prevailing Pacific Time), before the Honorable Martin R. Barash, United States
27 Bankruptcy Court for the Central District of California, 21041 Burbank Boulevard,

28

4

1   Courtroom 303, Woodland Hills, CA 91367, and may be adjourned from time to time. The

2   Sale Hearing shall take place via Zoomgov, accessible as follows:

3                 Meeting ID: 161 816 9836

4                 Password: 399666

5       8.     Any objections to any of the relief to be requested at the Sale Hearing must

6   be in writing, state the basis of such objections with specificity and shall be filed with the

7   Court on or before **December 22, 2022, at 6:00 p.m**. (prevailing Pacific Time), and such

8   objections shall be served in accordance with the Sale and Bidding Procedures Notice

9   and the Creditor Notice.

10      9.     The proposed sale of the Assets, the proposed assumption and assignment

11   of the purchased contracts, and the Auction shall be conducted in accordance with the

12   provisions of this Order and the Bidding Procedures.

13      10.    The Sale and Bidding Procedures Notice attached hereto as *Exhibit 2*, the

14   Creditor Notice attached hereto as *Exhibit 3*, and the Cure Notice attached hereto as

15   *Exhibit 4* provide proper notice to all parties in interest and are hereby approved.

16      11.    By no later than **December 6, 2022**, the Debtor shall serve by first class mail

17   the Sale and Bidding Procedures Notice on the following parties: (a) the U.S. Trustee; (b)

18   the subchapter V trustee; (c) counsel to Brunico; (d) counsel to any secured creditor; (e)

19   all parties, if any, known to be asserting a lien on any of the Assets and who would appear

20   as potentially holding a lien based on any search conducted to determine who asserts a

21   lien on the Debtor's assets; (f) all known counterparties to contracts proposed to be

22   assigned to the winning bidder; (g) all entities reasonably known to have expressed an

23   interest in bidding on the Assets; (h) the state taxing authorities where the Debtor's

24   operate; (i) District Director of Internal Revenue; and (j) all other parties that filed a notice

25   of appearance and demand for service of papers in the Debtor's bankruptcy cases under

26   Bankruptcy Rule 9010(b) as of the date of entry of this Order.

27      12.    By no later than **December 6, 2022**, the Debtor shall serve the Creditor

28   Notice on all known creditors of the Debtor.

13.     By no later than **December 6, 2022**, the Debtor shall file and serve the Cure Notice on the counterparties to any purchased contracts. Counterparties to any purchased contract (each a "**Counterparty**," and together, the "**Counterparties**") shall be served by next day delivery if within the continental United States, and by 3-day delivery if outside the continental United States.  Counterparties must file and serve any objection to the assumption and assignment of any purchased contract, including objections to any cure cost and such objections must attach a complete copy of the purchased contract (together with all amendments), and set forth with specificity (a) all defaults under the purchased contract, the cure costs that the Counterparty believes are owing and must be paid as a condition to assumption, and (c) any other objection to the assumption and assignment of the purchased contract, by **December 22, 2022 at 6:00 p.m**. (prevailing Pacific Time).

14.     Any Counterparty failing to timely file an objection to the Cure Amount set forth in the Cure Notice shall be deemed to consent to the (a) assumption and assignment of the purchase contract and shall be forever barred from objecting to the Cure Costs and from asserting any additional cure costs or other amounts against the Debtor, its estate, and the Successful Bidder with respect to the purchased contract to which it is a Counterparty; and (b) the reinstatement, without default, of the purchased contract upon receipt by the Counterparty of payment of the applicable Cure Cost. Notwithstanding anything to the contrary, none of the purchased contracts, and no other executory contract or unexpired lease, shall be assumed unless and until the occurrence of the closing by the Debtor and the Successful Bidder pursuant to asset purchase agreement as approved by order of this Court.

15.     Compliance with the foregoing notice provisions shall constitute sufficient notice of the Debtor's proposed sale of the Assets free and clear of all liens, claims, interests and encumbrances (all as set forth in the Sale Motion), the contemplated assumption and assignment of each purchased contract and the proposed amount of Cure Costs with respect to each such purchased contract, and except as set forth in

1 │ paragraphs 11 and 12 of this Order, no other or further notice of the sale shall be required

2 │ to be provided by the Debtors.

3 │     16.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h),

4 │ 6006(d) and 7062 or otherwise, the terms and conditions of this Order shall be

5 │ immediately effective and enforceable upon its entry, and no automatic stay of execution

6 │ shall apply to this Order.

7 │     17.    This Court shall retain jurisdiction to hear and determine all matters arising

8 │ from or related to the implementation of this Order. All matters arising from or related to

9 │ the implementation of this Order may be brought before the Court as a contested matter,

10 │ without the necessity of commencing an adversary proceeding.

11 │ **IT IS SO ORDERED**.

12 │

13 │                 # # #

14 │

15 │ _[signature]_    12/2/22

16 │ United States Bankruptcy Judge

17 │

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │

26 │

27 │

28 │

**EXHIBIT 1**



Leslie A. Cohen, Esq. (SBN: 93698)
leslie@lesliecohenlaw.com
J'aime Williams Kerper, Esq. (SBN 261148)
jaime@lesliecohenlaw.com
LESLIE COHEN LAW, PC
1615-A Montana Avenue
Santa Monica, CA 90403
Telephone:  (310) 394-5900
Facsimile:  (310) 394-9280

Attorneys
for Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO DIVISION**

In re

National Association of Television Program
Executives, Inc..

Debtor and
Debtor in Possession

Case No. 1:22-bk-11181-MB

Chapter 11

**BIDDING PROCEDURES**

These sale and bidding procedures (the "**Bidding Procedures**") govern the

procedures for the sale of substantially all of the assets (collectively, the "Assets") of

National Association of Television Program Executives, Inc. ("**Debtor**") pursuant to

chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy

Code**").

By motion (the "**Procedures Motion**")[1] dated November 15, 2022, the above-

captioned Debtor sought, among other things, approval of the Bidding Procedures

governing the process and procedures for the sale of the Assets. On _____, 2022,

the United States Bankruptcy Court for the Central District of California (the "**Bankruptcy

_____

[1] Capitalized terms used, but not otherwise defined herein, shall have the meanings given to them
in the Procedures Motion.

1

1  **Court**"), entered an order approving these Bidding Procedures (the "**Bidding Procedures**

2  **Order**" [Docket No. ___]). Pursuant to the Bidding Procedures Order, the Bankruptcy

3  Court has scheduled a hearing on **December 29, 2022, at 10:00 a.m.** (prevailing Pacific

4  Time), to consider the sale (the "**Sale Hearing**").

5      **I.**    **Assets to Be Sold**

6         The Debtor intends to sell substantially all of its assets including intellectual

7  property, as described more fully in the Stalking Horse APA (as defined below). Any

8  Potential Bidder (as defined below) may obtain a detailed description of the Assets

9  through the process described in Section II below. The Stalking Horse APA includes the

10  terms and conditions upon which the Debtor expect the Assets to be sold. Pursuant to

11  section 363 of the Bankruptcy Code and in accordance with these Bidding Procedures,

12  the Assets will be sold free and clear of all liens, claims, encumbrances, and interests.

13      **II.**    **Due Diligence**

14         Until the Bid Deadline (as defined below), the Debtor will afford to each interested

15  party: (i) determined by the Debtor to be reasonably likely, to make a Qualified Bid

16  (defined below); and (ii) who delivers an executed confidentiality agreement in form and

17  substance satisfactory to the Debtor (each, a "**Potential Bidder**"), reasonable access,

18  during normal business hours and subject to confidentiality requirements, to the books

19  and records of the Debtor reasonably requested by any Potential Bidder, to the extent

20  provision of such access or information is not prohibited by applicable law and relates to

21  the Assets. The Debtor will simultaneously distribute via a virtual data room in written form

22  any additional diligence materials not previously provided to the Stalking Horse Bidder or

23  any other Potential Bidder. Except as provided by applicable law or Bankruptcy Court

24  order, neither the Debtor nor its representatives shall be obligated to furnish any

25  information of any kind whatsoever relating to the Assets to any person or entity who is

26  not a Potential Bidder and who does not comply with the requirements of these Bidding

27  Procedures.

28

### III.    Determination of "Qualified Bidder" Status

Any Potential Bidder desiring to participate in the bidding process must be deemed a "**Qualified Bidder**". To be deemed a Qualified Bidder, a Potential Bidder must deliver to the Debtor financial information evidencing the Potential Bidder's ability to close the transaction satisfactory to the Debtor, in its sole discretion, or such other information as reasonably determined by the Debtor to support the Potential Bidder's ability to close the transaction.

### IV.    Bid Deadline

A Qualified Bidder that desires to make a bid shall deliver written and electronic copies of such bid to the Debtor's counsel: Leslie Cohen, Leslie Cohen Law PC, 1615-A Montana Avenue, Santa Monica, CA 90403 T: 310.394.9500 F: 310.394.9280 eslie@lesliecohenlaw.com *and* jaime@leslicohenlaw.com  so as to be received by no later than **6:00 p.m. (prevailing Pacific Time) on or before December 22, 2022** (the "**Bid Deadline**").

### V.    Requirements of a "Qualified Bid"

To be deemed a "Qualified Bid" that may be considered at the Auction (as defined below), a bid must:

a.  be in writing;

b.  be submitted by a Qualified Bidder;

c.  provide for a minimum cash component of the purchase price of at least $180,000, to be paid in full in immediately available funds upon closing;

d.  be accompanied by a deposit of $15,000 in the form of a wire transfer to the Debtor's counsel, Leslie Cohen Law PC.  Wire transfer information should be requested by email to leslie@lesliecohenlaw.com *and* jaime@leslicohenlaw.com prior to submitting any bid so that the deposit can be timely made by the Bid Deadline;"

e.  confirm the Qualified Bidder's completion of all due diligence required by such Qualified Bidder in connection with the proposed transaction;

3

f. be irrevocable until the earlier of (a) the Qualified Bidder's bid being determined by the Debtors not to be a Qualified Bid, or (b) another Qualified Bidder's bid for substantially all of the Assets being approved by the Court;

g. be accompanied by a fully executed asset purchase agreement (the "**Modified APA**") and a version electronically marked to show reasonable changes against the Stalking Horse APA;

h. be, in the Debtor's reasonable business judgment, following consultation with the Subchapter V Trustee and creditor Fontainebleau Florida Hotel, LLC (collectively, the "**Consultation Parties**") on substantially the same or better terms as the Stalking Horse APA;

i. identify all executory contracts or unexpired leases the Qualified Bidder seeks to have assigned to it;

j. demonstrate the capacity to provide adequate assurance of future performance under all executory contracts and unexpired leases that are being assumed and assigned and be prepared to provide evidence to the Court of ability to provide adequate assurance of future performance, as the Court will hold an evidentiary hearing on this issue if an overbidder wins at the Auction;

k. contain no contingencies of any kind;

l. be accompanied by evidence that the Qualified Bidder has financial resources readily available sufficient to finance the purchase of the Assets;

m. provide that the Qualified Bidder is obligated to perform as the Backup Bidder (as defined in the Bidding Procedures) in the event the Qualified Bidder is not the Successful Bidder; and

n. be accompanied by an affirmative statement from the Qualified Bidder that (a) it has and will continue to comply with the Bidding Procedures; (b) its bid does not entitle such Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement; and (c) it waives

4

1    any substantial contribution administrative expense claims under section 503(b)

2    of the Bankruptcy Code related to bidding for the Assets.

3    The Debtor shall, in consultation with the Consultation Parties, make a

4    determination regarding whether a bid is a Qualified Bid and shall notify all Qualified

5    Bidders whether their bids have been determined to be Qualified Bids by no later than

6    **4:00 p.m. (prevailing Pacific Time) on December 27, 2022**. The Debtor reserves the

7    right to reject any bid on any grounds.

8    In the event that the Debtor receives more than one Qualified Bid, the Debtor will

9    conduct an auction (the "**Auction**") for the Assets. The Auction will take place by Zoom on

10    **December 28, 2022 at 12:00 p.m. noon**. The Zoom information for the Auction will be

11    provided to Qualified Bidders by no later than **4:00 p.m. (prevailing Pacific Time) on**

12    **December 27, 2022.**

13    **VI.    Determination of Highest or Otherwise Best Offer**

14    It is contemplated that bids may include cash, deferred cash and noncash

15    consideration.  In assessing which bid constitutes the Baseline Bid, the Successful Bid

16    and the Backup Bid (as those terms are defined below), the Debtor, in consultation with

17    the Consultation Parties, may take into account any factors relevant to the value of the bid

18    to the Debtor's bankruptcy estate including, without limitation: (a) the amount of cash paid

19    at closing, (b) the value of any payments to be made following closing, (c) the likelihood of

20    a bidders ability to close and the timing of the closing, and (d) the value of any reduction in

21    claims against the estate.

22    **VI.    Stalking Horse Bidder**

23    The Debtors have completed arm's length negotiations with Brunico

24    Communications Ltd. or its designee (the "**Stalking Horse Bidder**" or "**Brunico**")  to serve

25    as the stalking horse bidder. As a result of those negotiations, the Stalking Horse Bidder

26    has submitted an initial bid of $150,000 plus assumption of certain liabilities (the "**Stalking**

27    **Horse Bid**"). The Stalking Horse Bid, memorialized by an Asset Purchase Agreement by

28    and between the Debtor and the Stalking Horse Bidder dated November 10, 2022 (the

5

1  "**Stalking Horse APA**"), shall be subject to higher and better bids pursuant to the terms of

2  these Bidding Procedures and applicable law. For purposes of these Bidding Procedures

3  and bidding at the Auction, the Stalking Horse Bidder is a Qualified Bidder and the

4  Stalking Horse Bid is a Qualified Bid.

5        **VII.**    **Negotiation of Stalking Horse Breakup Fee**

6        The Debtor has negotiated, and the Bankruptcy Court has approved, the

7  reimbursement of the Stalking Horse Bidder for its reasonable out-of-pocket fees and

8  expenses incurred in connection with the transactions contemplated by the Stalking Horse

9  APA in the amount of $20,000 (the "**Break Up Fee**") in the event that Brunico is not the

10  winning bid.

11        **VIII.**   **Auction Process**

12        In the event that the Debtor receives more than one Qualified Bid, the Debtor will

13  conduct an auction (the "**Auction**") for the Assets. The Auction will take place by Zoom on

14  **December 28, 2022 at 12:00 p.m. noon**.

15        The Debtor shall, in consultation with the Consultation Parties, determine the

16  highest or otherwise best Qualified Bid received at the Bid Deadline (the "**Baseline Bid**").

17  Prior to the Auction, the Baseline Bid will be shared with all Qualified Bidders. Qualified

18  Bidders will be permitted to revise, increase, and/or enhance their bid based upon the

19  terms of the Baseline Bid at the Auction. All Qualified Bidders will have the right to make

20  additional modifications to the Modified APA or the Stalking Horse APA, as the case may

21  be, at the Auction.

22        The Debtor will have the right to enact detailed procedures for the conduct of the

23  Auction at any time prior to the start of the Auction. Any rules developed by the Debtor will

24  provide that all bids in the Auction will be made and received in one room, on an open

25  basis, and all other Qualified Bidders participating in the Auction will be entitled to be

26  present for all bidding with the understanding that the true identity of each Qualified Bidder

27  will be fully disclosed to all other Qualified Bidders participating in the Auction and that all

28  material terms of each Qualified Bid submitted in response to the Baseline Bid or to any

1  Subsequent Overbid (as defined below) made at the Auction will be fully disclosed to all

2  other Qualified Bidders throughout the entire Auction. All bids shall be placed on the

3  record, which shall either be transcribed, videotaped, or recorded on an audio recording

4  device.  Bidding may be paused by the Debtor at any time.  During pauses in the bidding,

5  the Debtor may meet privately with any participant and with the Consultation Parties.

6  Parties entitled to attend the Auction shall include the Debtor, the Consultation

7  Parties, the Stalking Horse Bidder, the Qualified Bidders, any prepetition secured

8  creditors, and each of those respective parties' representatives. The Stalking Horse

9  Bidder and each Qualified Bidder shall appear at the Auction through a representative

10  who provides appropriate evidence of such person's authority. Only a Qualified Bidder

11  that submitted a timely Qualified Bid and the Stalking Horse Bidder shall be entitled to

12  make bids at the Auction.

13  The Auction will be conducted in rounds and in any order the Debtor determines.

14  Each Qualified Bidder shall have the right to continue to improve its respective bid at the

15  Auction. A Qualified Bidder may increase its Qualified Bid in any manner that it deems fit;

16  provided, however, that each subsequent bid must exceed the purchase price of the

17  previous  bid by at least $10,000 of additional consideration.

18  The Initial Overbid and Subsequent Overbids must continue to meet each of the

19  criteria of a Qualified Bid (other than the requirement that such bids be submitted by the

20  Bid Deadline). The Debtor reserves the right to approach any Qualified Bidder and seek

21  clarification to bids at any time.

22  The Auction will continue until the Debtor determines, in consultation with the

23  Consultation Parties, and subject to Bankruptcy Court approval, that it has received the

24  highest or otherwise best offer for Assets (the "**Successful Bid**") and the next highest or

25  otherwise best Qualified Bid for the Assets as the Auction (the "**Reserved Bid**"). The

26  Qualified Bidder submitting the Successful Bid shall become the "**Successful Bidder**" and

27  the Qualified Bidder submitting the Reserve Bid shall be the "**Reserve Bidder**."

28

7

1   The Debtor reserves the right, in its business judgment, to make one or more

2   modifications and/or adjournments to the Auction to, among other things: (i) facilitate

3   discussions between the Debtor, on the one hand, and individual Qualified Bidders, on the

4   other hand; (ii) allow individual Qualified Bidders to consider how they wish to proceed;

5   and (iii) give Qualified Bidders the opportunity to provide the Debtor with such additional

6   evidence as the Debtor in its reasonable business judgment may require.

7   **IX.    The Sale Hearing**

8   At the Sale Hearing, the Debtor will seek entry of an order authorizing and

9   approving the sale to the Successful Bidder. No later than 6:00 p.m. (prevailing Pacific

10  Time) on **December 22, 2022**, all objections to the relief requested at the Sale Hearing

11  shall be filed and served in the manner prescribed in the motion to approve the sale of the

12  Assets. The Sale Hearing may be adjourned or rescheduled from time to time. The Debtor

13  shall provide notice of such adjournment or rescheduling to the following parties or their

14  counsel: (i) the U.S. Trustee and Subchapter V trustee; (ii) the Stalking Horse Bidder; (iii)

15  Qualified Bidders; (iv) all parties that have filed a timely objection to the sale; (v) all

16  persons or entities known or reasonably believed to have asserted a lien in any of the

17  Assets; and (vi) all parties that have requested notice in the Debtor's bankruptcy cases.

18  **X.    Failure to Consummate Purchase**

19  Following the Sale Hearing, if the Successful Bidder fails to consummate the

20  closing of the sale because of a breach or failure to perform on the part of such

21  Successful Bidder, the Debtor will be authorized, but not required, to consummate the

22  sale with Reserve Bidder without further order of the Bankruptcy Court. In such case, the

23  defaulting Successful Bidder's deposit shall be forfeited to the Debtor. Additionally, the

24  Debtor shall be entitled to seek all available damages from the defaulting Successful

25  Bidder.

26  //

27  //

28

8

### XI.    Return of Deposit

The deposits of the Successful Bidder shall be applied to the Successful Bidder's obligations under the Successful Bid upon closing of the transactions contemplated thereby. If a Successful Bidder fails to close the transactions contemplated by the Successful Bidder then such Successful Bidder shall forfeit its deposit.

The deposit of the Reserve Bidder shall be returned to the Reserve Bidder upon the later of (i) the closing of the transaction to the Successful Bidder and (ii) thirty days after the Sale Hearing; provided, however, that if a Successful Bidder fails to close the transactions when and as provided in the Successful Bid, then the deposit of the Reserve Bidder shall be applied to the Reserve Bidder's obligations under the Reserve Bid upon closing of the transactions contemplated thereby. If a Reserve Bidder fails to close the transactions contemplated by a Reserve Bid, then such Reserve Bidder shall forfeit its deposit.

All other deposits of Qualified Bidders who are not the Successful Bidder or the Reserve Bidder shall be returned within three business days after the conclusion of the Auction. The Debtor reserves all of its rights regarding any return of deposits, and the failure by the Debtor to timely return any deposits shall not serve as a claim for breach of any Qualified Bids or create any default in favor of any Qualified Bidders.

### XII.    Modification of Bidding Procedures

The Debtor may amend any non-material terms of these Bidding Procedures, in its reasonable business judgment, at any time in any manner that will best promote the goals of the bidding process, including but not limited to extending or modifying any of the dates described herein.

### XIII.    XIII. Miscellaneous

Nothing in these Bidding Procedures shall prejudice a party's rights pursuant to section 363(k) of the Bankruptcy Code to credit bid at the Auction; provided, however, that any party exercising credit bid rights must comply with all other provisions of these

1  Bidding Procedures, including but not limited to the requirements for submitting a

2  Qualified Bid.

3  December 6, 2022                    LESLIE COHEN LAW PC

4

5                                     By: _____ /s/ Leslie A. Cohen _____
                                          Leslie A. Cohen
6                                         Attorneys for Debtor in Possession

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                          10

**EXHIBIT 2**

1  Leslie A. Cohen, Esq. (SBN: 93698)
      leslie@lesliecohenlaw.com
2  J'aime Williams Kerper, Esq. (SBN 261148)
      jaime@lesliecohenlaw.com
3  LESLIE COHEN LAW, PC
  1615-A Montana Avenue
4  Santa Monica, CA 90403
  Telephone:  (310) 394-5900
5  Facsimile:  (310) 394-9280

6  Attorneys for Debtor in Possession

7

8  **UNITED STATES BANKRUPTCY COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA**

10  **SAN FERNANDO DIVISION**

11  *In re*

12  National Association of Television Program
  Executives, Inc..

13

14               Debtor and
             Debtor in Possession

15

16

17

Case No. 1:22-bk-11181-MB

Chapter 11

**NOTICE OF BIDDING PROCEDURES, AUCTION DATE, AND SALE HEARING**

18      **PLEASE TAKE NOTICE** that on November 15, 2022, National Association of

19  Television Program Executives, Inc. ("**Debtor**") filed the *Motion For An Order (A)*

20  *Approving Bidding Procedures For Sale Of Debtors' Assets; (B) Authorizing And*

21  *Scheduling An Auction; (C) Scheduling Hearing For Approval Of The Sale Of Assets Free*

22  *And Clear Of Liens And The Assumption And Assignment Of Certain Executory Contracts*

23  *And Unexpired Leases To The Successful Bidder; (D) Approving Procedures And Setting*

24  *Deadlines For The Assumption And Assignment Of Executory Contracts And Unexpired*

25  *Leases, Including Cure  Amounts Relating Thereto; (E) Approving Certain Deadlines And*

26

27

28

1

1  *The Form, Manner And Sufficiency Of Notice; And (F) Granting Other Related Relief*,

2  Docket No. 20 (the "**Procedures Motion**").[1]

3      On December _____, 2022, the Bankruptcy Court entered an order (the

4  "**Procedures Order**") granting the Procedures Motion and approving the bidding

5  procedures attached hereto (the "**Bidding Procedures**") to be used in connection with a

6  sale of substantially all of the Debtor's assets (the "**Assets**"). Pursuant to separate motion

7  (the "**Sale Motion**," Doc. No._____), the Assets are being sold free and clear of all liens,

8  claims, encumbrances and interests.

9      Brunico Communications Ltd.  (the "**Stalking Horse Bidder**" or "**Brunico**") has

10  submitted an offer, as the "Stalking Horse Bidder" to the Debtor to purchase the Assets on

11  the terms set forth in that certain Asset Purchase Agreement between the Debtor and the

12  Stalking Horse Bidder (the "**Stalking Horse APA**"), which is conditioned on Bankruptcy

13  Court approval and is subject to higher or better offers. The Debtor determined that the

14  offer of the Stalking Horse Bidder is presently the highest and best offer. The sale terms

15  are set forth with more particularly in the Stalking Horse APA. The Stalking Horse bidder

16  bid for the Assets is $150,000 plus assumption of certain liabilities.

17      Other relevant terms of the Stalking Horse APA include the following: (a) the

18  Assets will be sold free and clear of liens, claims, encumbrances and other interests; (b) in

19  the event the Court approves a bid from another party, the Stalking Horse Bidder will

20  receive a Break Up Fee in the amount of $20,000 (c) the Stalking Horse Bidder will

21  assume certain enumerated liabilities as of the closing; and (d) certain executory contracts

22  and unexpired leases will be assumed by the Debtor and assigned to the Stalking Horse

23  Bidder.

24      If offers are received by the Debtor from other Qualified Bidders in accordance with

25  the Bidding Procedures for a price and on terms that are higher or better than the Stalking

26  

27  [1] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Bidding
28  Procedures and Procedures Motion.

2

1  Horse APA, the Assets will be sold at an Auction. It is contemplated that bids may include
2  cash, deferred cash and noncash consideration. In assessing which bid constitutes the
3  Baseline Bid, the Successful Bid and the Backup Bid, the Debtor, in consultation with the
4  Consultation Parties, may take into account any factors relevant to the value of the bid to
5  the Debtor's bankruptcy estate including, without limitation: (a) the amount of cash paid at
6  closing, (b) the value of any payments to be made following closing, (c) the likelihood of a
7  bidder's ability to close and the timing of the closing, and (d) the value of any reduction in
8  claims against the estate. The Bidding Procedures afford the Debtor the opportunity to
9  subject the Assets to competitive bidding while preserving the Stalking Horse Bid, thereby
10  providing a floor price for the Assets.

11      The Debtor is seeking to sell substantially all of its assets under chapter 11 of the
12  United States Bankruptcy Code. After the sale of the Assets, the Debtor will no longer
13  operate. The Debtor believes the sale of the Assets is in the best interest of the Debtor's
14  estate and will provide the highest and best value for the Assets.

15                           **Bidding Procedures**

16      A copy of the Bidding Procedures is attached hereto as ***Exhibit 1***. The Bidding
17  Procedures describe, inter alia, the terms of the bidding process, the requirements and
18  deadlines for participation therein, required terms of any bids, and the time, location and
19  conduct of the Auction. In the event of any inconsistency or conflict between this Notice,
20  the Bidding Procedures and the Bidding Procedures Order, the Bidding Procedures Order
21  shall control.

22                           **The Auction**

23      PLEASE TAKE FURTHER NOTICE that the Debtor is authorized to conduct the
24  Auction in accordance with the Bidding Procedures to determine the highest and best bid
25  with respect to the Assets. The Auction, if any, will take place by Zoom on **December 28,**
26  **2022 at 12:00 p.m. noon**. The Zoom information for the Auction will be provided to
27  Qualified Bidders by no later than **4:00 p.m. (prevailing Pacific Time) on December 27,**
28  **2022**.

3

1    **The Sale Hearing**

2    PLEASE TAKE FURTHER NOTICE that the Bankruptcy Court has scheduled a

3    hearing for **December 29, 2022**, at 10:00a.m. (prevailing Pacific Time) (the "**Sale**

4    **Hearing**") to consider either approval of the Stalking Horse APA in the absence of an

5    Auction or approval of the successful bid and confirm the results at the Auction for the

6    Assets, pursuant to the Sale Motion. The Sale Hearing may be adjourned in open court

7    from time to time, without further notice. The Sale Hearing will be held before the before

8    the Honorable Martin R. Barash, United States Bankruptcy Court for the Central District of

9    California, 21041 Burbank Boulevard, Courtroom 303, Woodland Hills, CA 91367.  The

10   Sale Hearing shall take place via Zoomgov, accessible as follows:

11          Meeting ID: 161 816 9836

12          Password: 399666

13   PLEASE TAKE FURTHER NOTICE that the Bidding Procedures attached hereto

14   shall govern the bidding process and any Auction of the Assets. Any person that wishes to

15   receive a copy of the Sale Motion (with all attachments), the Stalking Horse APA or the

16   Procedures Order (with all attachments), can make such request in writing to

17          Leslie Cohen Law PC
              Attn: Leslie Cohen and J'aime Williams Kerper
18          1615-A Montana Avenue
              Santa Monica, CA 90403
19          Email: leslie@lesliecohenlaw.com and jaime@lesliecohenlaw.com

20                              **Objections**

21   Any objection to any of the relief to be requested at the Sale Hearing must be in

22   writing, state the basis of such objection with specificity, and shall be filed with the Court,

23   and shall be served on: (i) counsel to the Debtor: Leslie Cohen Law PC, Attn: Leslie

24   Cohen and J'aime Williams Kerper, 1615-A Montana Avenue, Santa Monica, CA 90403

25   (ii) ) Subchapter V Trustee: Andrew W. Levin, 3946 Stone Canyon Avenue, Sherman

26   Oaks, CA 91403 (iii) the Office of the United States Trustee, Office of the U.S. Trustee,

27   Los Angeles, California 90012; and (iv) counsel to the Stalking Horse Bidder: Zolkin

28

4

1 | Talerico LLP, Attn: Derrick Talerico, 12121 Wilshire Blvd., Suite 1120, Los Angeles, CA

2 | 90025, so as to be received by **December 22, 2022**, at 6:00 p.m. (prevailing Pacific

3 | Time).

4 | December 6, 2022                           LESLIE COHEN LAW PC

5 |

6 |

                                    By: _____ */s/ Leslie A. Cohen* _____
7 |                                         Leslie A. Cohen
8 |                                         Attorneys for Debtor in Possession

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

5

**EXHIBIT 3**

1  Leslie A. Cohen, Esq. (SBN: 93698)
        leslie@lesliecohenlaw.com
2  J'aime Williams Kerper, Esq. (SBN 261148)
        jaime@lesliecohenlaw.com
3  LESLIE COHEN LAW, PC
   1615-A Montana Avenue
4  Santa Monica, CA 90403
   Telephone:  (310) 394-5900
5  Facsimile:  (310) 394-9280

6  Attorneys for Debtor in Possession

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                  **SAN FERNANDO DIVISION**

11 | *In re*                                    | Case No. 1:22-bk-11181-MB
12 | National Association of Television Program | Chapter 11
   | Executives, Inc..                          |
13 |                                            | **NOTICE OF AUCTION AND HEARING
   |                                            | ON MOTION AUTHORIZING SALE OF
14 |              Debtor and                     | SUBSTANTIALL ALL OF THE
   |              Debtor in Possession           | DEBTOR'S ASSETS FREE AND
15 |                                            | CLEAR OF ALL LIENS, CLAIMS,
   |                                            | ENCUMBRANCES AND INTERESTS**
16 |                                            |
17 |                                            | **Date: December 29, 2022
   |                                            | Time: 10:00 a.m.**
18 |                                            | **Courtroom: 303
   |                                            | Via Zoomgov**
19 |                                            | **Meeting ID: 161 816 9836
   |                                            | Password: 399666**
20

21

22      ALL PARTIES IN INTEREST– PLEASE TAKE NOTICE OF THE FOLLOWING:

23      National Association of Television Program Executives, Inc. ("**Debtor**") has filed the

24 *Motion for an Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets*

25 *Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing the*

26 *Assumption and Assignment of Certain Executory Contracts; and (C) Granting Related*

27 *Relief*, Docket No. ___ (the "**Sale Motion**").

28

                            1

**Assets to Be Sold**

The Debtor proposes to sell substantially all of its assets (the "**Assets**") to Brunico Communications Ltd.  (the "**Stalking Horse Bidder**" or "**Brunico**") or to the party that submits the highest and best bid. The Debtor further proposes to assume and assign certain executory contracts (the "**Purchased Contracts**") associated with the Assets.

**Sale Free and Clear of Liens, Claims, Encumbrances and Interests**

Pursuant to section 363(b) and (f) of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), and subject to any orders entered by the Court, the Debtor will seek authority to sell all rights, title, and interest in the Assets to the Stalking Horse Bidder or the Qualified Bidder[1] submitting the highest and best Qualifying Bid in accordance with the Bidding Procedures, in either case, free and clear of any liens, claims, encumbrances, and interests, with all such liens, claims, encumbrances and interests attaching to the proceeds of such sale.

**Auction And Bidding Procedures**

**A.    The Auction**

In the event the Debtor, in consultation with the Consultation Parties, determines that it has received more than one Qualified Bid, the Debtor will conduct an auction (the "**Auction**") for all of the Assets on **December 28, 2022 commencing at 12:00 p.m.** (prevailing Pacific Time) via Zoom. The Zoom information for the Auction will be provided to Qualified Bidders by no later than **4:00 p.m. (prevailing Pacific Time) on December 27, 2022.** Only parties submitting Qualified Bids will be invited to participate in the Auction.

**B.    The Bidding Procedures**

The Bidding Procedures, which are available upon request by contacting the undersigned, set forth the process by which the Debtor seeks to conduct the Auction.

---

[1] Unless otherwise defined herein, capitalized terms used herein have the meanings given to them in the Sale Motion and exhibits attached thereto.

2

1  Participating bidders at the Auction will include the Stalking Horse Bidder and any

2  potential purchaser that satisfies the requirements set forth in the Bidding Procedures.

3  **C.    The Sale Hearing**

4  The Court will hold a hearing (the "**Sale Hearing**") on the Sale Motion on **December**

5  **29, 2022 at 10:00 a.m**. prevailing Pacific Time,  before the Honorable Martin R. Barash,

6  United States Bankruptcy Court for the Central District of California, 21041 Burbank

7  Boulevard, Courtroom 303, Woodland Hills, CA 91367. The Sale Hearing shall take place

8  via Zoomgov, accessible as follows:

9  Meeting ID: 161 816 9836

10  Password: 399666

11  At the Sale Hearing, the Debtor will seek approval of the proposed sale of the Assets.

12  Objections, if any, to the Sale Motion must be filed with the Court and served upon

13  parties in interest so as to be received no later than 6:00 p.m. (prevailing Pacific Time),

14  **December 22, 2022**.

15  **D.    Assumption of Contracts and Leases**

16  As part of the sale of substantially all of the Debtor's assets, the Debtor proposes to

17  assume and assign the Purchased Contracts. A list of the Purchased Contracts may be

18  obtained from the Debtor.

19  If you are a party to a Purchased Contract, you will receive a separate notice,

20  which will identify the contracts or leases to be assigned, the identity of the assignee, and

21  the amount, if any, to be paid as a "cure amount" under section 365 of the Bankruptcy

22  Code. Objections, if any, to the assumption and assignment of any Purchased Contracts,

23  or to any proposed Cure Costs therein, must be filed with the Court and served upon

24  parties in interest so as to be received no later than 6:00 p.m. (prevailing Pacific Time),

25  **December 22, 2022**.

26  **E.    Complete Copies**

27  Complete copies of the Sale Motion and related documents may be obtained

28  contacting counsel for the Debtor:

3

1

Leslie Cohen Law PC
Attn: Leslie Cohen and J'aime Williams Kerper

2

1615-A Montana Avenue
Santa Monica, CA 90403

3

Email: leslie@lesliecohenlaw.com and jaime@lesliecohenlaw.com

4

PLEASE MARK YOUR CALENDARS ACCORDINGLY.

5

6

December 6, 2022                              LESLIE COHEN LAW PC

7

8

9

By: _____ */s/ Leslie A. Cohen* _____
Leslie A. Cohen

10

Attorneys for Debtor in Possession

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

**EXHIBIT 4**

1  Leslie A. Cohen, Esq. (SBN: 93698)
       leslie@lesliecohenlaw.com
2  J'aime Williams Kerper, Esq. (SBN 261148)
       jaime@lesliecohenlaw.com
3  LESLIE COHEN LAW, PC
   1615-A Montana Avenue
4  Santa Monica, CA 90403
   Telephone: (310) 394-5900
5  Facsimile: (310) 394-9280

6  Attorneys for Debtor in Possession

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10             **SAN FERNANDO DIVISION**

11  *In re*                                    Case No. 1:22-bk-11181-MB

12  National Association of Television Program   Chapter 11
    Executives, Inc..
13                                              **NOTICE TO COUNTERPARTIES TO**
                                                **EXECUTORY CONTRACTS AND**
14                      Debtor and              **UNEXPIRED LEASES THAT MAY BE**
                        Debtor in Possession    **ASSUMED AND ASSIGNED**
15
                                                **Date: December 29, 2022**
16                                              **Time: 10:00 a.m.**
                                                **Courtroom: 303**
17                                              **Via Zoomgov**
                                                **Meeting ID: 161 816 9836**
18                                              **Password: 399666**

19  ─────────────────────

20          <u>**Your rights may be affected**</u>. You should read these papers carefully and

21  discuss them with your attorney, if you have one in this bankruptcy case. (If you do

22  not have an attorney, you may wish to consult one.)

23          **PLEASE TAKE NOTICE** that on October 11, 2022 (the "**Petition Date**"), National

24  Association of Television Program Executives, Inc. ("**Debtor**") filed a voluntary petition for

25  relief under title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy**

26  **Code**").

27          **PLEASE TAKE FURTHER NOTICE** that on December 6, 2022, the Debtor filed the

28  *Motion for an Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets*

                                    1

1  *Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing the*
2  *Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and*
3  *(C) Granting Related Relief,* Docket No. ___ (the "**Sale Motion**"). Pursuant to the Sale
4  Motion, the Debtor seeks, inter alia, the Bankruptcy Court's approval of the sale of
5  substantially all the Debtor's assets, including the assumption and assignment of various
6  executory contracts and unexpired leases (the "**Purchased Contracts**") to the Successful
7  Bidder (as defined in the Sale Motion), free and clear of liens, claims, encumbrances and
8  other interests.

9      **PLEASE TAKE FURTHER NOTICE** that on December ___, 2022 the Bankruptcy
10 Court entered an Order *(A) Approving Bidding Procedures For Sale Of Debtors' Assets;*
11 *(B) Authorizing And Scheduling An Auction; (C) Scheduling Hearing For Approval Of The*
12 *Sale Of Assets Free And Clear Of Liens And The Assumption And Assignment Of Certain*
13 *Executory Contracts And Unexpired Leases To The Successful Bidder; (D) Approving*
14 *Procedures And Setting Deadlines For The Assumption And Assignment Of Executory*
15 *Contracts And Unexpired Leases, Including Cure  Amounts Relating Thereto; (E)*
16 *Approving Certain Deadlines And The Form, Manner And Sufficiency Of Notice; And (F)*
17 *Granting Other Related Relief,* Docket No. ___ (the "**Procedures Order**"). This Notice is
18 issued pursuant to the requirements of the Procedures Order. The Procedures Order and
19 the order approving the Sale Motion shall govern the Debtor's assumption and
20 assignment of the Purchased Contracts.

21     **PLEASE TAKE FURTHER NOTICE** that the hearing (the "**Sale Hearing**") on the
22 Sale Motion has been set **for December 29, 2022, at 10:00 a.m.** (Prevailing Pacific Time)
23 before the Honorable Martin R. Barash, United States Bankruptcy Court for the Central
24 District of California, 21041 Burbank Boulevard, Courtroom 303, Woodland Hills, CA
25 91367. The Sale Hearing shall take place via Zoomgov, accessible as follows:

26          Meeting ID: 161 816 9836

27          Password: 399666

28

2

1    **PLEASE TAKE FURTHER NOTICE** that the amount shown on Exhibit 1 attached

2    to this Notice as the "Cure Cost" for the Purchased Contract listed on Exhibit 1 to which

3    you are a party is the amount, based upon the Debtors' books and records, which the

4    Debtor asserts is owed to cure any defaults existing under the Purchased Contract as of

5    the Petition Date.[1] This is the amount that will be paid based on the purchase of the

6    contract by the Stalking Horse Bidder.

7    **PLEASE TAKE FURTHER NOTICE** that the a party other than the Stalking Horse

8    Bidder may be Successful Bidder at Auction, and that the ultimate Purchaser may add or

9    exclude any agreement or agreements from the list of Purchased Contracts at any time

10    within 10 days prior to the Sale Hearing.

11    **PLEASE TAKE FURTHER NOTICE** that if you disagree with the Cure Cost shown

12    for the Purchased Contract on Exhibit 1, or if you object to the assumption and

13    assignment of your Purchased Contract on any ground, you must file an objection in

14    writing with Honorable United States Bankruptcy Court for the Central District of

15    California, 21041 Burbank Boulevard, Suite 342, Woodland Hills, CA 91367 on or before

16    6:00 p.m. Prevailing Pacific Time on **December 22, 2022**. In addition, any objection must

17    attached a complete copy of your contract (including all amendments thereto) and set

18    forth the specific default or defaults alleged, set forth any such other ground for objection,

19    and set forth any Cure Cost as alleged by you.

20    **PLEASE TAKE FURTHER NOTICE** that any objection to the assignment and

21    assumption of your Purchased Contract or to the Cure Cost must be served so as to be

22    received by that same date and time stated above upon the following parties: (i) counsel

23    to the Debtor: Leslie Cohen Law PC, Attn: Leslie Cohen and J'aime Williams Kerper,

24    1615-A Montana Avenue, Santa Monica, CA 90403 (ii) ) Subchapter V Trustee: Andrew

25    W. Levin, 3946 Stone Canyon Avenue, Sherman Oaks, CA 91403 (iii) the Office of the

26

27    [1] Your receipt of this notice does not constitute an admission by the Debtor that your agreement
actually constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy
Code, and the Debtor expressly reserves the right to challenge the status of any agreement.

28

1   United States Trustee, Office of the U.S. Trustee, Los Angeles, California 90012; and (iv)

2   counsel to the Stalking Horse Bidder: Zolkin Talerico LLP, Attn: Derrick Talerico, 12121

3   Wilshire Blvd., Suite 1120, Los Angeles, CA 90025.

4          **PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT TIMELY FILE**

5   **AND SERVE AN OBJECTION OR OBJECTIONS AS STATED ABOVE, THE COURT**

6   **MAY GRANT THE RELIEF REQUESTED IN THE SALE MOTION WITHOUT FURTHER**

7   **NOTICE. ANY NON-DEBTOR PARTY TO ANY PURCHASED CONTRACT WHO DOES**

8   **NOT FILE A TIMELY OBJECTION TO THE CURE COSTS FOR SUCH PURCHASED**

9   **CONTRACT IS DEEMED TO HAVE CONSENTED TO SUCH CURE COSTS, AND ANY**

10  **NON-DEBTOR PARTY TO ANY PURCHASED CONTRACT WHO DOES NOT FILE A**

11  **TIMELY OBJECTION ON OTHER GROUNDS IS DEEMED TO HAVE CONSENTED TO**

12  **THE ASSUMPTION AND ASSIGNMENT OF THE PURCHASED CONTRACT ON THE**

13  **TERMS AND CONDITIONS REQUESTED BY THE DEBTOR**.

14

15  December 6, 2022                    LESLIE COHEN LAW PC

16

17
                                        By: _____ /s/ Leslie A. Cohen _____
18                                          Leslie A. Cohen
                                            Attorneys for Debtor in Possession
19

20

21

22

23

24

25

26

27

28

                                        4

**EXHIBIT 1**

**[PURCHASED CONTRACTS LIST]**

**(Only contracts which are still in effect and have not been terminated postpetition are included)**

| Contract Counterparty | Contract Name/Description | Cure Amount | To Be Assumed and Assigned Under Stalking Horse APA |
|---|---|---|---|
| JP Bommel 720 Greenwich Street Apt 2D New York, NY, 10014 | Executive consulting Agreement | $0 | |
| Edward Jones 20530 Anza Torrance, CA, 90503 | Asset management agreement | $0 | |
| John Sullivan 3944 Woolwine Drive 1st Floor Los Angeles, CA, 90063 | website maintenance and asset management agreement | $0 | |
| INTERCONTINENTAL BUDAPEST Apáczai Csere János utca 12-14 Budapest, Hungary, 1052 | Event venue contract | $0 | X |
| Pery Consulting 7607 Wiscasset Drive West Hills, CA, 91304 | Outsourced consulting and finance services agreement | $0 | |

5

# EXHIBIT C

## <u>DECLARATION OF RUSSELL GOLDSTEIN</u>

I, Russell Goldstein, declare as follows:

1.      I am, the President and CEO of Brunico Communications Ltd. ("<u>Brunico</u>"). The facts set forth herein are based upon my personal knowledge, or in the case of occurrences for which I was not present, based upon the facts as I came to learn them. If called as a witness, I could and would testify competently thereto.

2.      Brunico took part in an open bidding process for selection as the stalking horse bidder for designated assets (the "<u>Assets</u>") of the debtor, National Association of Television Program Executives, Inc. (the "<u>Debtor</u>"), and was selected as the stalking horse bidder for the proposed asset sale.

3.      Brunico negotiated the Agreement that is proposed for the sale of the Assets should Brunico be selected as the winning bidder at an auction and approved by this Court in good faith and at arms' length.

4.      Per the terms of the Agreement and as set forth in the Sale Motion filed by the Debtor, the Agreement, if approved by the Court, would have Brunico assume $1,057,187.85 of the Debtor's liabilities (the "<u>Assumed Liabilities</u>"). Brunico has the ability to make payment on the Assumed Liabilities when and if the holders of such Assumed Liabilities make demand for payment. Brunico does not expect it will be called upon to make cash payments on most if not all of the Assumed Liabilities; Brunico will offer in-kind payment to the holders of the Assumed Liabilities through participation in upcoming events. Nevertheless, should demand be made for payment on any Assumed Liabilities, Brunico has the means to satisfy such demand as evidenced by the current bank statement attached hereto as **<u>Exhibit 1</u>**.

5.      Per the Agreement, Brunico, if it is the winning bidder for the Assets, will take assignment of that certain contract between Debtor and Intercontinental Budapest (the "<u>Budapest Contract</u>"). No cure payment is anticipated for the assumption of the Budapest Contract. Brunico anticipates it will perform on the Budapest Contract and make payment to the Intercontinental Budapest as set forth therein. Nevertheless, per the terms of the Amendment #1 to the Budapest Contract setting forth a cancellation fee schedule ranging from EUR 10,818.86 up to EUR

1

233,020.30, Brunico has the means to satisfy any cancellation fee on the Budapest Contract per **Exhibit 1**.

6.      To the best of my knowledge, Brunico does not have any insider relationship with the Debtor such that neither myself nor any director or officer of Brunico (each a "Brunico Executive") have any ownership interest in the Debtor nor does any Brunico Executive have any personal relationship a director or officer of the Debtor, other than a professional relationship.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 5th day of December 2022, at Toronto, Canada.

_____
Russell Goldstein

# EXHIBIT 1

EXHIBIT 1



**ROYAL BANK OF CANADA**
P.O. BOX 4047 TERMINAL A
TORONTO ON  M5W 1L5

# Business Account Statement

RBBDA30000_1068414 E D 00002   00051
BRUNICO COMMUNICATIONS LTD.
SUITE 100
366 ADELAIDE ST W
TORONTO ON  M5V 1R9

October 31, 2022 to November 30, 2022

**Account number:**

**How to reach us:**
Please contact your RBC Banking representative or call
1-800-Royal®2-0
(1-800-769-2520)
www.rbcroyalbank.com/business

## Account Summary for this Period

**Royal Bank of Canada**
200 BAY ST-MAIN FLR, TORONTO, ON  M5J 2J5

| | |
|---|---|
| Opening balance on October 31, 2022 | $3,363,666.29 |
| Total deposits & credits (113) | + 1,139,621.51 |
| Total cheques & debits (72) | - 1,591,547.15 |
| **Closing balance on November 30, 2022** | **= $2,911,740.65** |

## Account Activity Details

| Date | Description | Cheques & Debits ($) | Deposits & Credits ($) | Balance ($) |
|---|---|---|---|---|
| | **Opening balance** | | | 3,363,666.29 |
| 01 Nov | Misc Payment ▮ | | ▮ | |
| | Expense Payment ▮ | | ▮ | |
| | Misc Payment ▮ | | ▮ | |
| | Misc Payment ▮ | | ▮ | |
| | Direct Deposits (PDS) service total ▮ | ▮ | | |
| | Bill Payment ▮ | | ▮ | |
| | Misc Payment ▮ | | ▮ | |
| | Misc Payment ▮ | | ▮ | |
| | Misc Payment ▮ | | ▮ | |
| | Cheque - 307 | ▮ | | 3,342,271.95 |
| | Deposit interest | | ▮ | 3,345,285.93 |
| 02 Nov | Misc Payment  AMEX ▮ | | ▮ | |

**EXHIBIT 1**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1615-A Montana Avenue, Santa Monica, CA 90404

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S MOTION FOR ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ANY LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND (C) GRANTING OTHER RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
____12/6/22____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Russell Clementson    russell.clementson@usdoj.gov
Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;jessica@lesliecohenlaw.com
Andrew W. Levin (TR)    andy@fairpointllc.com, C198@ecfcbis.com
Michael B Lubic    michael.lubic@klgates.com, jonathan.randolph@klgates.com,klgatesbankruptcy@klgates.com
Derrick Talerico    dtalerico@ztlegal.com, maraki@ztlegal.com,sfritz@ztlegal.com
United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)    ___12/6/22/22___, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached
    page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)   I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached
    page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 12/6/22 | Jessica Spagnoli | /s/ Jessica Spagnoli |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                 **F 9013-3.1.PROOF.SERVICE**

**BY US. Mail**

Hon. Martin R. Barash
United States Bankruptcy Court
21041 Burbank Blvd,
Woodland Hills, CA 91367-6606

Andrew W. Levin (TR)
3946 Stone Canyon Avenue
Sherman Oaks, CA 91403-4538

United States Trustee
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

**Secured**

None

**20 Largest Unsecured**

Lionsgate TV
2700 Colorado Avenue
Santa Monica, CA, 90404

MGM Television
245 North Beverly Drive
Beverly Hills, 90210

NBC Universal
30 Rockefeller Plaza
15th Floor East
New York, NY, 10112

ModcoMedia
102 Madison Avenue
10th Fl.
New York, NY, 90004

Sony Pictures
10202 W. Washington Blvd.
Culver City, CA, 90232

Disney Media Distribution - Latin
Two Alhambra Plaza
9th Floor
Coral Gables, FL, 33134

Grand Hyatt at Baha Mar
One Baha Mar Boulevard
PO Box SP-64324
Nassau, The Bahamas

NBCUniversal Telemundo
1 Telemundo Way
Miami, FL, 33182

INTERCONTINENTAL
BUDAPEST
Apáczai Csere János
utca 12-14
Budapest, Hungary, 1052

~~PLUTO TV~~
~~750 North San Vicente~~
~~Suite 800~~
~~West Hollywood, CA, 90069~~

Endemol Shine North America
5161 Lankershim Suite 400
North Hollywood, CA, 91601

MGM Television
245 North Beverly Drive
Beverly Hills, 90210

Inter Medya Hiz. Tic. A.S.
Kore Sehitleri Cad.
Kore Sehitleri Cd. 16/1
Istanbul, Turkey, AK, 34394

The CW Television Network
3300 West Olive Ave.
Bldg. 168
Burbank, CA, 91505

Redbox
One Tower Place
Suite 900
Oakbrook Terrace, IL, 60181

Schramm Marketing Group
222 Ocean Avenue
Northport, NY, 11768

Globo Comunicação e
Participações S.A.
303 Jardim Botânico
CEP 22460-010
Rio de Janeiro, Brazil, CNPJ
27.865.757/0001

Debmar-Mercury
2700 Colorado Avenue
4th Floor
Santa Monica, CA, 90404

ViacomCBS Networks
2450 Colorado Avenue
Suite 500E
Santa Monica, CA, 90404

NBC Universal Local
15000 SW 27th Street
2nd Fl.
Miami, FL, 33133

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.