MEGHANN A. TRIPLETT (SBN 268005)
*Meghann@MarguliesFaithLaw.com*
SAMUEL M. BOYAMIAN (SBN 316877)
*Samuel@MarguliesFaithLaw.com*
**MARGULIES FAITH LLP**
16030 Ventura Blvd., Suite 470
Encino, California 91436
Telephone: (818) 705-2777
Facsimile: (818) 705-3777

Attorneys for Plaintiff, Jeremy W. Faith,
Chapter 11 Plan Fiduciary

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>NATIONAL ASSOCIATION OF TELEVISION PROGRAM EXECUTIVES, INC.,<br><br>Debtor. | Case No.: 1:22-bk-11181-MB<br><br>Chapter: 11 (Subchapter V)<br><br>**MOTION FOR ORDER AUTHORIZING (1) COMPROMISE OF CONTROVERSY WITH AMERICAN EXPRESS NATIONAL BANK, AND (2) AUTHORITY TO PAY MARGULIES FAITH LLP AS SPECIAL LITIGATION COUNSEL PURSUANT TO CONTINGENCY FEE AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION IN SUPPORT**<br><br>[No Hearing Required Unless Requested Local Bankruptcy Rule 9013-1(o)] |

**TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE, AND ALL INTERESTED PARTIES:**

Jeremy W. Faith ("Plan Fiduciary"), the chapter 11 Plan Fiduciary for the bankruptcy estate ("Estate") of reorganized debtor National Association of Television Program Executives, Inc. (the "Debtor"), respectfully moves this Court for an order, pursuant to Federal Rule of Bankruptcy Procedure (F.R.B.P.) 9019 and Local Bankruptcy Rule (L.B.R.) 9013-1(o) authorizing the compromise of controversy (the "Motion") with American Express National Bank dba American Express Company, a New York Corporation ("AMEX") on the terms set forth in the "Settlement Agreement and

Mutual Release" (the "Settlement Agreement") attached as **Exhibit 1** and as more fully described below.

In support of this Motion, the Plan Fiduciary will rely on these moving papers, the attached Memorandum of Points and Authorities; the Declaration of Jeremy W. Faith, Chapter 11 Plan Fiduciary, all pleadings and records on file in this case, all matters which are subject to judicial notice, and such further evidence as may be presented.

WHEREFORE, the Plan Fiduciary respectfully requests that this court enter an order:

1. Granting this Motion;

2. Approving the Settlement Agreement set forth in **Exhibit 1**;

3. Determining that the Settlement Agreement is reasonable, adequate under the circumstances, and in the best interests of creditors pursuant to *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986);

4. Authorizing the Plan Fiduciary to pay Margulies Faith LLP ("MF"), the Plan Fiduciary's special litigation counsel, a contingency fee of 35% of the $38,000.00 settlement amount in the sum of $13,300.00 in fees, plus $350.00 in litigation costs incurred by MF pursuant to the contingency fee arrangement previously approved by this Court;

5. Authorizing and directing the Plan Fiduciary to take such further action as required to effectuate the terms of the compromise; and

6. Granting such other and further relief as the court deems just and proper.

DATED: March 5, 2025          **MARGULIES FAITH, LLP**

By: */s/ Meghann A. Triplett*
    Meghann A. Triplett
    Samuel M. Boyamian
    Attorneys for Jeremy W. Faith,
    Chapter 11 Plan Fiduciary

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

### A. Case Background

The Debtor commenced the instant case under chapter 11 of the Bankruptcy Code on October 11, 2022 (the "Petition Date"). The Debtor elected to proceed as a Subchapter V debtor for the purpose of liquidating the Debtor's assets.

On August 22, 2024, the Debtor filed its Amended Plan of Liquidation for Small Business Under Chapter 11 (the "Plan") [Docket No. 251]. The Plan Fiduciary was appointed pursuant to the Plan which was confirmed by court order entered on September 17, 2024 [Dkt. No. 258]. The Effective Date of the Plan was September 18, 2024.

The Plan Fiduciary has retained Margulies Faith LLP ("MF") as special litigation counsel pursuant to order of the Court entered February 7, 2025 (Dkt. No. 306). Under the terms of retention, MF shall receive a contingency fee of 35% of the "Amount Recovered" ("Contingency Fee")[1] plus reimbursement of costs advanced for MF's work as the Plan Fiduciary's special litigation counsel. This court having previously approved the employment of MF and the terms of employment, should authorize payment of the Contingency Fee and reimbursement of the litigation costs directly from the settlement proceeds without further order of the court pursuant 11 U.S.C. § 328(a).

The Plan Fiduciary, with the assistance of his counsel and accountants, performed an analysis of the payments made by the Debtor to creditors within the four-years prior to the Petition Date and took action to pursue recovery of certain transfers, the Plan Fiduciary determined to be subject to avoidance and recovery under the Bankruptcy Code.

---

[1] The term "Amount Recovered" means the gross amount of any recovery from prosecution of estate claims, before deduction of any unreimbursed or unpaid costs, whether such sums are established by settlement or by entry of judgment and including any award of attorney's fees. *See* Exhibit "D" to the Plan [Dkt. No. 251]

### B. The Adversary Proceeding

The Plan Fiduciary alleges that the Debtor made pre-petition payments to AMEX totaling $43,354.53 (the "AMEX Transfers") within the 90-days immediately prior to the Petition Date and that such transfers are subject to avoidance and recovery by the Plan Fiduciary under 11 U.S.C. §§ 547(b) and 550.

On October 11, 2024, the Plan Fiduciary filed a "Complaint for: (1) Avoidance of Preferential Transfers [11 U.S.C. § 547]; (2) Disallowance of Claims [11 U.S.C. § 502]; (3) Recovery of Avoided Transfers [11 U.S.C. § 550]; and (4) Preserving Transfers [11 U.S.C. § 551]" (the "Complaint") against AMEX and W Hotel Management, Inc. dba W Hollywood ("W Hotel") initiating the adversary proceeding entitled *Jeremy W. Faith, Chapter 11 Plan Fiduciary v. American Express National Bank, et al.*, adversary case number 1:24-ap-01054-MB (the "Adversary Proceeding").

### C. Proposed Settlement Agreement

Following the filing of the Complaint, the Plan Fiduciary and AMEX, through their respective counsel, engaged in settlement discussions, which included document exchanges as well as a review of AMEX's ordinary course of business and new value defenses. The Plan Fiduciary determined that AMEX had viable defenses under § 547(c) that covered a portion of the AMEX Transfers. The Plan Fiduciary and AMEX thereafter reached an agreement to settle the AMEX Transfers for $38,000.00 (approximately 85% of the amount at issue) (the "Settlement Amount"), which amount has been paid to the Plan Fiduciary, and it is being held pending approval of the Settlement Agreement. The Settlement Agreement also provides for mutual releases between the parties, for AMEX to have an allowed claim under § 502(h) for the Settlement Amount provided such claim is filed within 30 days following approval of the Settlement Agreement; and for dismissal of the Adversary Proceeding with prejudice.[2]

---

[2] The Complaint also seeks to recover a portion of the AMEX Transfers from defendant W. Hotel under § 550(a). Given the Settlement Amount, the Plan Fiduciary will seek to dismiss of the entire Adversary, including the claims against W. Hotel following approval of the Settlement Agreement.

A true and correct copy of the Settlement Agreement is attached as **Exhibit 1**.

The foregoing is only a summary of the proposed Settlement Agreement. All interested persons are encouraged to read the Settlement Agreement attached hereto as **Exhibit 1**, the terms of which are controlling.

## II.

## ARGUMENT

### A. The Plan Fiduciary is Authorized to Enter Into the Compromise Represented by the Settlement Agreement and Notice of the Relief Sought is Proper

Rule 9019(a) authorizes the Court to approve a compromise or settlement upon a Plan Fiduciary's motion and directs that notice of the motion be provided in accordance with F.R.B.P. 2002 and may be noticed according to L.B.R. 9013-1(o). In conjunction with F.R.B.P. 2002(a)(6), L.B.R. 9013-1(o) dictates that all creditors shall receive no less than fourteen (14) days' notice by mail of an opportunity to request a hearing date.

In the instant case, a notice of motion that summarizes the relief sought by the Motion was served upon all creditors of the Estate, as well as any parties requesting special notice, concurrently with the filing of this Motion in accordance with the notice provisions of L.B.R. 9013-1(o). The Plan Fiduciary expects no opposition to the Motion. Accordingly, the Plan Fiduciary respectfully requests that the Court enter an order finding that notice is sufficient to creditors for purposes of this Motion.

### B. The Compromise Represented by the Settlement Agreement Should be Approved

It is well established that settlements are favored over continued litigation. *See, e.g., Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1384 (9th Cir. 1986) (recognizing that "the law favors compromise and not litigation for its own sake"); *Magill v. Springfield Marine Bank (In re Heissenger Resources, Ltd.)*, 67 B.R. 378, 382 (C.D. Ill. 1986) ("Settlement is intended to conserve . . . [scarce judicial resources], and is therefore encouraged"). Accordingly, in approving a settlement agreement, the court

need not conduct an exhaustive investigation of the claims sought to be compromised. Rather, it is sufficient that the court find that the settlement is "fair and equitable," negotiated in good faith and reasonably believed to be the best compromise negotiable under the circumstances. *See In re A & C Properties*, 784 F.2d at 1381.

"In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider: (a) the probability of successful litigation; (b) any impediments to collection; (c) the complexity, expense, inconvenience and delay of litigation; and (d) the interest of creditors, with deference to their reasonable opinions." *Id*. Moreover, "[e]ach factor need not be treated in a vacuum; rather, the factors should be considered as a whole to determine whether the settlement compares favorably with the expected rewards of litigation." *Grief & Co. v. Shapiro (In re W. Funding Inc.)*, 550 B.R. 841, 851 (9th Cir. B.A.P. 2016), aff'd, 705 F. App'x 600 (9th Cir. 2017). The court has discretion as to the weight to be given each factor; it need not weigh them equally. Thus, any one factor may have weight in isolation that justifies the settlement. *Id*.; *See, e.g., In re Pac. Gas & Elec. Co.*, 304 B.R. 395 (Bankr. N.D. Cal. 2004) (each factor does not need to be satisfied provided that the "factors as a whole" favored settlement); *In re WCI Cable, Inc.*, 282 B.R. 457, 472-73 (Bankr. D. Or. 2002) (approving settlement despite high probability of success where litigation costs "extremely high"). Further, the court is not required to hold a full evidentiary hearing or a mini trial before it can approve a compromise. The court need only "canvass the issues and see whether the settlement 'falls below the lowest point in the range of reasonableness.'" *In re Roussos*, 2017 U.S. Dist. LEXIS 60538 at *11-12 (C.D. Cal. Apr. 20, 2017) (internal citations omitted); *See also, Spirtos v. Ray (In re Spirtos)*, 2006 Bankr LEXIS 4894 at *32 (9th Cir B.A.P. 2006) ("Rather than an exhaustive investigation or a mini-trial on the merits, the bankruptcy court need only find that the settlement was negotiated in good faith and is reasonable, fair and equitable".).

/ / /

/ / /

Based upon an analysis of the foregoing factors, the Court should conclude that the terms of the Settlement Agreement are fair and equitable, and well within the range of reasonableness.

### 1. **Probability of Success in Litigation**

The first factor bankruptcy courts look to in considering approval of a settlement is the probability of success in the litigation. While the Plan Fiduciary believes that he has established a *prima facie* case as to the avoidability of the subject transfers under § 547(b), the Plan Fiduciary has determined that absent the Settlement Agreement, AMEX may be able to defend a portion of the payments at issue. The proposed settlement provides for payment of approximately 85% of the amount at issue. Given the Settlement Amount, there is a significant risk that, absent the settlement, the Plan Fiduciary will recover less from litigation, and with greater expense and delay than if the proposed settlement is approved. Consequently, the Plan Fiduciary believes the proposed Settlement Agreement is the most expedient and cost-effective method for resolving the claims at issue and collecting money for the Estate. Therefore, this factor favors approval of the Settlement Agreement.

### 2. **Any Impediments to Collection**

In analyzing the benefit of a proposed settlement, the Plan Fiduciary always considers the ability to collect any judgment from the defending party. Here, collection from AMEX would not pose any significant issues. Therefore, this element does not have bearing on the analysis of the benefits of the Settlement Agreement. However, given the Settlement Amount, the expense and risks of litigation, the costs of collection, and benefit to creditors; this element is significantly outweighed by the other three *A&C factors*.

### 3. **The Complexity, Expense, Inconvenience, and Delay of Litigation**

Another consideration when analyzing the merits of a compromise is the complexity and expense associated with litigating the underlying claims. While the legal issues involved in the asserted claims at issue are not necessarily complex, developing

the facts will require considerable time, expense, and delay as AMEX has provided evidence to support its defense to a portion of the transfers at issue, trial on the subject of what constitutes "ordinary course" as well as "new value" would be factually intensive, requiring the review and submission of evidence. To continue with the litigation, the Plan Fiduciary would incur a significant amount of fees and costs to engage in discovery, prepare for trial, and attend trial. The Settlement Agreement avoids all of the foregoing expenses and associated delays. Accordingly, this factor also favors approval of the Settlement Agreement.

### 4. The Paramount Interest of Creditors

In negotiating the Settlement Agreement, the Plan Fiduciary has kept the paramount interest of the Estate's creditors in mind by considering the benefit achieved by the Settlement Agreement against the cost of litigation as well as the merits of the underlying claims. The Plan Fiduciary in his business judgment has determined that the settlement presents a reasonable compromise given his assessment of the claims, the uncertainty of litigation, and expense and delay of obtaining a judgment through further litigation. The proposed settlement allows the Plan Fiduciary to preserve resources by reducing litigation costs and at the same time enhancing the value of the Estate. The Settlement Amount is significant and represents approximately 85% of the total amount of the transfers at issue. Finally, the proposed settlement is the product of good faith, arms-length negotiations between the parties. As such, the Plan Fiduciary believes that the terms of the settlement are fair, equitable, and reasonable, and this factor also favors approval of the Settlement Agreement.

### III.

### CONCLUSION

Accordingly, the Plan Fiduciary respectfully requests that this Court enter an order:

1.  Granting this Motion;

2.  Approving the Settlement Agreement set forth in **Exhibit 1**;

3.    Determining that the Settlement Agreement is reasonable, adequate under the circumstances, and in the best interests of creditors pursuant to *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986);

4.    Authorizing the Plan Fiduciary to pay Margulies Faith LLP ("MF"), the Plan Fiduciary's special litigation counsel, a contingency fee of 35% of the $38,000.00 settlement amount in the sum of $13,300.00 in fees, plus $350.00 in litigation costs incurred by MF pursuant to the contingency fee arrangement previously approved by this Court);

5.    Authorizing and directing the Plan Fiduciary to take such further action as required to effectuate the terms of the compromise; and

6.    Granting such other and further relief as the Court deems just and proper.

DATED: March 5, 2025                  **MARGULIES FAITH, LLP**

By: */s/ Meghann A. Triplett*
      Meghann A. Triplett
      Samuel M. Boyamian
      Attorneys for Jeremy W. Faith,
      Chapter 11 Plan Fiduciary

## DECLARATION OF JEREMY W. FAITH

I, Jeremy W. Faith, declare as follows:

1. I am the Chapter 11 Plan Fiduciary ("Plan Fiduciary") for the bankruptcy estate of the reorganized debtor National Association of Television Program Executives, Inc. (the "Debtor").

2. I make this declaration in support of the "Motion for Order Authorizing (1) Compromise of Controversy with American Express National Bank, and (2) Authority to Pay Margulies Faith LLP as Special Litigation Counsel Pursuant to Contingency Fee Agreement" (the "Motion"), to which this declaration is affixed. Unless otherwise defined, all capitalized terms herein have the same meaning as in the Motion.

3. By the attached Motion, I am requesting authority to enter into and consummate the "Settlement Agreement and Mutual Release" that I entered into with AMEX pursuant to F.R.B.P. 9019. A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit 1**.

4. As reflected on the Bankruptcy Court Docket, on October 11, 2022, the Debtor filed a chapter 11 petition, initiating this case. The Debtor elected to proceed as a Subchapter V debtor for the purpose of liquidating the Debtor's assets.

5. I was appointed as the Plan Fiduciary pursuant to the Debtor's Plan. which was confirmed by court order entered on September 17, 2024. The Effective Date of the Plan was September 18, 2024.

6. As contemplated by the Plan, I retained MF as special litigation counsel pursuant to order of the Court entered February 7, 2025. Under the terms of retention, MF shall receive a contingency fee of 35% of the gross amount of any recovery from prosecution of estate claims, before deduction of any unreimbursed or unpaid costs, whether such sums are established by settlement or by entry of judgment and including any award of attorney's fees plus reimbursement of costs advanced for MF's work as special litigation counsel.

7. This court having previously approved the employment of MF and the terms of employment, I am requesting authorization to pay MF the Contingency Fee and for authorization to pay for reimbursement of the litigation costs directly from the settlement proceeds without further order of the court pursuant 11 U.S.C. § 328(a).

8. As part of my investigation in this case, with the assistance of my counsel and accountants, I performed an analysis of the payments made by the Debtor to creditors within the four-years prior to the Petition Date and took action to pursue recovery of certain transfers I believe to be subject to avoidance and recovery under the Bankruptcy Code.

9. On October 11, 2024, I filed a Complaint against AMEX and W Hotel Management, Inc.

10. Following the filing of the Complaint, through my Special Counsel, I engaged in settlement discussions, which included document exchanges as well as a review of AMEX's ordinary course of business and new value defenses. I have determined that AMEX has viable defenses under 11 U.S.C. § 547(c) and would be able to defend a portion of the payments at issue. Therefore, I have agreed to compromise and settle the Complaint and the claims against AMEX on the terms and conditions set forth in the Settlement Agreement, subject to Court approval.

11. The proposed Settlement Agreement allows for a recovery of approximately 85% of the $43,354.53 in transfers at issue in the Adversary Proceeding. This recovery is significant considering the costs associated with continued litigation. Therefore, I have determined that there is a significant risk that, absent the Settlement Agreement, I would recover far less from litigation and with greater expense and delay than if the Settlement Agreement is approved.

12. The proposed Settlement Agreement was negotiated in good faith, at arms' length, and there are no undisclosed terms.

/ / /

/ / /

11

13. I have exercised my best business judgment in reaching the proposed compromise contained in the Settlement Agreement and believe proposed settlement is the most expedient and cost-effective method for resolving the Adversary Proceeding and collecting money for the Estate.

14. Based on the foregoing and as further detailed in the Motion and analysis of the *A&C Property* factors, I believe that the terms of the Settlement Agreement are fair and reasonable and in the best interests of the Estate and its creditors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed March 5, 2025 at Encino, California.

_____
Jeremy W. Faith

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into as of this __ day of January 2025, by and between Jeremy W. Faith, as Chapter 11 Plan Fiduciary (the "Plan Fiduciary") for National Association of Television Program Executives, Inc. (the "Debtor") and American Express National Bank dba American Express Company, a New York Corporation ("AMEX"). The Plan Fiduciary and AMEX are also referred to below individually as a "Party" or collectively as the "Parties."

### WHEREAS:

A.  On or about October 11, 2022 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code before the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), initiating the chapter 11 case identified as *In re National Association of Television Program Executives, Inc.*, Case Number 1:22-bk-11181-MB (the "Bankruptcy Case"). The Debtor elected to proceed as a Supchapter V debtor for the purpose of liquidating the Debtor's assets.

B.  The Plan Fiduciary was appointed as the Chapter 11 Plan Fiduciary on or about September 17, 2024, pursuant to the Order Confirming Second Amended Subchapter V Chapter 11 Plan (Dkt. No. 258) and 11 U.S.C. § 1123(b)(3)(B).

C.  On October 11, 2024, Jeremy W. Faith, as Chapter 11 Plan Fiduciary filed an adversary proceeding against AMEX in the Bankruptcy Court, Adversary Proceeding No.: 1:24-ap-01054-MB (the "Adversary Proceeding"), asserting claims against AMEX to avoid and recover certain alleged preference transfers totaling $43,354.53 made by the Debtor to AMEX or one of its affiliates.

D.  AMEX has asserted various defenses and denies liability for the Plan Fiduciary's claims against it.

E.  The Parties, having informally exchanged documents and information and evaluated the strengths and weaknesses of their respective claims and defenses, and without any admissions as to their respective positions, are desirous of compromising and settling the Plan Fiduciary's claims against AMEX in their entirety, in order to avoid the expenses and risks of litigation, on the following terms and conditions.

**NOW THEREFORE**, in consideration of the premises and mutual promises set forth below and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1.  **Settlement Payment.** AMEX agrees to pay to Jeremy W. Faith, as Chapter 11 Plan Fiduciary for National Association of Television Program Executives, Inc. (the "Payee") the sum of Thirty-Eight-Thousand Dollars ($38,000.00) (the "Settlement Payment") within thirty (30) days of AMEX's counsel's receipt of (i) the fully executed Agreement, and (ii) an IRS Form W-9 completed by the Payee. The Settlement Payment shall be delivered to Payee in the form of a business check, cashier's check or by wire transfer payable pursuant to wire instructions

1

EXHIBIT 1    Page 13

provided by the Payee upon request. Checks should made out to "Jeremy W. Faith, Chapter 11 Plan Fiduciary" and sent via a trackable method to:

> Jeremy W. Faith, Chapter 11 Plan Fiduciary
> c/o Meghann A. Triplett, Esq.
> MARGULIES FAITH, LLP
> 16030 Ventura Blvd., Suite 470
> Encino, California 91436

2. **Court Approval of Settlement.** This Agreement is conditioned upon and shall not become effective unless and until it is approved by the Bankruptcy Court. If the Plan Fiduciary receives the Settlement Payment prior to such approval, the Plan Fiduciary shall hold the Settlement Payment in trust pending the entry of a final order by the Bankruptcy Court approving the Agreement or, if there is an appeal, until entry of a final order with respect to the appeal (the "Effective Date"). In the event that the Court does not approve this Agreement or there is a final, non-appealable order of an appellate court reversing an order of the Bankruptcy Court approving this Agreement, (i) the Plan Fiduciary shall promptly return the Settlement Payment to AMEX, and (ii) this Agreement shall be null and void with the Parties returning to their original respective positions with no rights waived.

3. **The Plan Fiduciary's Release.** Except for the obligations contained in this Agreement, and upon receipt of the Settlement Payment and occurrence of the Effective Date, the Plan Fiduciary on behalf of himself in his capacity as Plan Fiduciary, the Debtor and the Debtor's bankruptcy estate, releases and discharges AMEX and its affiliates, including, without limitation, American Express Travel Related Services Company, Inc. ("AETRS") and American Express Company (the "AMEX Affiliates"), and their respective officers, directors, agents, employees, and attorneys (collectively, the "AMEX Parties"), from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys' fees, liabilities, and indemnities, of any kind or nature whatsoever, whether known or unknown, suspected or unsuspected, arising from or relating to any claims asserted or that could have been asserted against the AMEX Parties by the Plan Fiduciary or the Debtor related in any manner to the Debtor or the Bankruptcy Case at any time prior to the execution of this Agreement, including, without limitation, any claims under Chapter 5 of the Bankruptcy Code or comparable state statutes. The Plan Fiduciary acknowledges that he or his attorneys may hereafter discover facts different from or in addition to the facts that he now knows or believes to be true as to the subject matter of this Agreement, but that it is his intention to hereby fully and finally release the claims set forth in this paragraph, notwithstanding the discovery of any such different or additional facts.

4. **AMEX's Release.** Except for the obligations contained in this Agreement, and upon delivery of the Settlement Payment and occurrence of the Effective Date, AMEX, on behalf of itself and the AMEX Affiliates, releases and discharges the Plan Fiduciary, the Debtor and the Debtor's bankruptcy estate, and the Plan Fiduciary's agents, employees and attorneys (collectively, the "Plan Fiduciary Released Parties"), from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys' fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to any claims asserted or that could have been asserted against the Plan Fiduciary

2

**EXHIBIT 1**                                                                 **Page 14**

Released Parties by AMEX or the AMEX Affiliates related to the Debtor or the Bankruptcy Case at any time prior to the execution of this Agreement; provided, however, this release does not extend to any contractual obligations (including charges on credit or charge cards) by any entity or individual other than the Debtor. AMEX and the AMEX Affiliates acknowledge that they or their attorneys may hereafter discover facts different from or in addition to the facts that they now know or believe to be true as to the subject matter of this Agreement, but that it is their intention to hereby fully and finally release the claims set forth in this paragraph, notwithstanding the discovery of any such different or additional facts.

5. **Section 502(h) claim.** AMEX or one of its affiliates, upon approval of this Agreement by the Bankruptcy Court and AMEX's remittance of the Settlement Payment pursuant to the terms set forth above, may file a proof of claim in the amount of the Settlement Payment under Section 502(h) of the Bankruptcy Code, and the Plan Fiduciary agrees not to object to such claim provided such claim is filed within 30 days of the Bankruptcy Court's entry of an order approving this Agreement.

6. **Dismissal of the Plan Fiduciary's Claims Against AMEX.** As soon as practicable after receipt of the Settlement Payment and occurrence of the Effective Date, the Plan Fiduciary and AMEX shall promptly execute a Stipulation of Dismissal of the Plan Fiduciary's claims in the Adversary Proceeding against AMEX with prejudice pursuant to Fed. R. Civ. P. 41, with each Party to bear its own attorneys' fees and costs of suit.

7. **No Admission of Liability.** Nothing in this Agreement shall be construed as an admission of liability by any Party to the Agreement.

8. **Merger and Integration.** This document sets forth the entire agreement of the Parties and all prior and contemporaneous conversations, agreements, understandings, covenants, representations, and negotiations with respect to the subject matter hereof are merged herein and superseded hereby. No other agreements, covenants, representations, or warranties, express or implied, oral or written, have been made by any of the Parties with respect to the subject matter hereof.

9. **Counterparts.** This Agreement can be signed in facsimile or PDF counterparts.

10. **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction to enforce and construe the terms and provisions of this Agreement.

11. **Governing Law.** This Agreement is made and entered into under the laws of the State of California and Title 11 of the United States Code, and shall be interpreted, applied, and enforced under those laws. The Parties hereto agree that this Agreement shall be governed by the laws of the State of California and Title 11 of the United States Code, and any litigation concerning this Agreement shall be held in the Bankruptcy Court.

12. **No Presumption.** There shall be no drafting inference in connection with this Agreement.

13. **Review by Counsel.** By signing this Agreement, the Parties represent that they have reviewed this Agreement with counsel or have been given an opportunity to review it with counsel and have chosen not to do so.

14. **Authority.** By signing this Agreement, the Parties represent that they have full authority to enter into this Agreement.

15. **Miscellaneous.** The Parties shall bear their respective costs, expenses, and attorneys' fees incurred in connection with this Agreement. This Agreement may be amended, modified, or otherwise changed only in a writing signed by both Parties and, if applicable, with Bankruptcy Court approval. This Agreement shall bind and inure to the benefit of the Parties hereto and their respective successors, predecessors, and assigns. The Parties agree to, on request of the other Party, to perform all acts reasonably necessary to effectuate this Agreement.

JEREMY W. FAITH,
CHAPTER 11 PLAN FIDUCIARY FOR
NATIONAL ASSOCIATION OF
TELEVISION PROGRAM EXECUTIVES, INC.

_____           Dated: 1-7-2025

AMERICAN EXPRESS NATIONAL BANK


By: _____        Dated: 1/2/25
    BECKET & LEE LLP/
    Jordan M. Katz
Title: _____
    ATTORNEYS FOR AMERICAN EXPRESS
    NATIONAL BANK

4

**EXHIBIT 1**                                                              **Page 16**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
16030 Ventura Blvd., Suite 470, Encino, CA 91436

A true and correct copy of the foregoing document entitled **MOTION FOR ORDER AUTHORIZING (1) COMPROMISE OF CONTROVERSY WITH AMERICAN EXPRESS NATIONAL BANK, AND (2) AUTHORITY TO PAY MARGULIES FAITH LLP AS SPECIAL LITIGATION COUNSEL PURSUANT TO CONTINGENCY FEE AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 7, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **March 7, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**JUDGE:** Service on Judge not required per Judge Barash's Procedures re: Serving Judge's Copy of Documents (Rev. 1/8/24).

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 7, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**SENT VIA EMAIL:**
**ATTORNEY FOR DEFENDANTS:**
**BECKET & LEE LLP -** Ken Kleppinger, Esq. - kkleppinger@becket-lee.com; Gabriel J. Washel, Esq. - GWashel@Becket-Lee.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 7, 2025 | Vicky Castrellon | /s/ Vicky Castrellon |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

# ADDITIONAL SERVICE INFORMATION

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

**Samuel Mushegh Boyamian on behalf of Interested Party Courtesy NEF**
samuel@marguliesfaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**Samuel Mushegh Boyamian on behalf of Other Professional Jeremy W. Faith**
samuel@marguliesfaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**Samuel Mushegh Boyamian on behalf of Plaintiff Jeremy W. Faith, Chapter 11 Plan Fiduciary**
samuel@marguliesfaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**Russell Clementson on behalf of U.S. Plan Fiduciary United States Plan Fiduciary (SV)**
russell.clementson@usdoj.gov

**Leslie A Cohen on behalf of Debtor National Association of Television Program Executives, Inc.**
leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

**Jeremy Faith on behalf of Interested Party Courtesy NEF**
Jeremy@MarguliesFaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**Jeremy Faith on behalf of Other Professional Jeremy W. Faith**
Jeremy@MarguliesFaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**John-Patrick McGinnis Fritz (TR)**
jpftrustee@lnbyg.com, jpf@trustesolutions.net

**Michael B Lubic on behalf of Creditor Fontainebleau Florida Hotel, LLC d/b/a Fontainebleau Miami Beach**
michael.lubic@klgates.com, jonathan.randolph@klgates.com,klgatesbankruptcy@klgates.com

**Derrick Talerico on behalf of Interested Party Brunico Communications Ltd**
dtalerico@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com

**Meghann A Triplett on behalf of Interested Party Courtesy NEF**
Meghann@MarguliesFaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**Meghann A Triplett on behalf of Other Professional Jeremy W. Faith**
Meghann@MarguliesFaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**Meghann A Triplett on behalf of Plaintiff Jeremy W. Faith, Chapter 11 Plan Fiduciary**
Meghann@MarguliesFaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**United States Plan Fiduciary (SV)**
ustpregion16.wh.ecf@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                   **F 9013-3.1.PROOF.SERVICE**